**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  IN RE ABBOTT LABORATORIES NORVIR          No. C 04-1511 CW
    ANTI-TRUST LITIGATION
12                                            (Consolidated Case)
                                              No. C 04-4203 CW
13
                                              ORDER GRANTING IN
14                                            PART PLAINTIFFS'
                                              MOTION FOR CLASS
15                                            CERTIFICATION

16  _____/

17

18       Plaintiffs John Doe 1, John Doe 2 and the Service Employees

19  International Union Health and Welfare Fund (SEIU) move pursuant to

20  Federal Rule of Civil Procedure 23 for certification of a class.

21  Defendant Abbott Laboratories opposes the motion.  The matter was

22  heard on April 13, 2007.  Having considered the parties' papers and

23  oral arguments, the Court grants in part Plaintiffs' motion for

24  class certification.

25                            BACKGROUND

26       Protease inhibitors (PIs) are considered the most potent class

27  of drugs to combat HIV.  In 1996, Defendant introduced Norvir as a

28  stand-alone PI.  After Norvir's release, it was discovered that,

when used in a low dose with another PI, Norvir would "boost" the anti-viral properties of that PI.

In 2000, Defendant introduced Kaletra, a pill containing the protease inhibitor lopinavir and Norvir.  Although effective and widely used, Kaletra had significant side effects for some patients.  Studies showed that two new PIs, however, when boosted with Norvir, were as effective as Kaletra, and were more convenient.  After these PIs were introduced, Kaletra's market share fell more than Defendant anticipated.

On December 3, 2003, after the release of these two new PIs, Defendant raised by 400 percent the wholesale price of Norvir; it did not raise the price of Kaletra.  Defendant contends that it raised Norvir's price so that it would be more in line with the drug's enormous clinical value.  Plaintiffs contend that the Norvir price increase was an illegal attempt to achieve an anti-competitive purpose in the "boosted market," which Plaintiffs define as the market for those PIs, such as Reyataz, Lexiva and Kaletra, that are prescribed for use with Norvir as a booster. Plaintiffs sued Defendant, alleging violations of section 2 of the Sherman Act and California Business and Professions Code section 17200 and unjust enrichment.

Plaintiffs now seek to certify the following class: All persons or entities throughout the United States and its territories who purchased or paid for, or who reimbursed another person or entity who purchased or paid for, Norvir as a booster to other protease inhibitors intended for consumption by themselves, their families, or their members, employees, plan participants and

United States District Court
For the Northern District of California

beneficiaries or insureds, and who paid all or part of the cost of Norvir ("the Class") during the period December 3, 2003 through such time in the future as the effects of Defendant's illegal conduct, as alleged, have ceased ("the Class Period"). Excluded from the Class are Defendant and its respective subsidiaries and affiliates, all government entities (except for government-funded employee benefits funds), and all persons or entities that purchase Norvir: (i) for purposes of resale, or (ii) directly from Defendant. Plaintiffs further move the Court to appoint themselves as class representatives and to appoint Labaton Sucharow & Rudoff LLP and Berman DeValerio Pease Tabacco Burt & Pucillo as co-lead class counsel.

Defendant opposes the motion for class certification, arguing that the Individual Doe Plaintiffs are not members of the proposed class and, therefore, are not proper class representatives. It further argues that none of the named Plaintiffs is a proper class representative for the Sherman Act claim or for the California state law unfair competition claim, and that certification of the unjust enrichment claim is not appropriate because of the varying laws of fifty States and the predominance of individual issues.

DISCUSSION

I.   Legal Standard for Class Certification

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). See Fed. R. Civ. P. 23. The party seeking class certification bears the burden of demonstrating that each element of Rule 23 is

satisfied.  Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).

A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has borne its burden.  General Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982).  In determining whether the plaintiffs have carried their burden, the court may not consider the merits of the plaintiffs' claims.  Burkhalter Travel Agency v. MacFarms Intern., Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).  Rather, the court must take the substantive allegations of the complaint as true.  Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).  Nevertheless, the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action.  Burkhalter, 141 F.R.D. at 152.  And the court may consider supplemental evidentiary submissions of the parties.  In re Methionine Antitrust Litig., 204 F.R.D. 161, 163 (N.D. Cal. 2001); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983) (noting that "some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a)"; however, "it is improper to advance a decision on the merits at the class certification stage").  Ultimately, it is in the district court's discretion whether a class should be certified.  Burkhalter, 141 F.R.D. at 152.

I.   Class Membership and Standing

Implicit in Rule 23 is the requirement that the class representatives be members of the class.  Westways World Travel,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Inc. v. AMR Corp., 218 F.R.D. 223, 230 (C.D. Cal. 2003); see also General Tel., 457 U.S. at 156 (holding that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members"). Further, standing "is a jurisdictional element that must be satisfied prior to class certification." Nelsen v. King County, 895 F.2d 1248, 1249-50 (9th Cir. 1990). As the Eleventh Circuit explains, it is "well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." Wooden v. Bd. of Regents of Univ. Sys. of Georgia, 247 F.3d 1262, 1287-88 (11th Cir. 2001).

A.  Class Membership

Defendant does not dispute that Plaintiff SEIU is a member of the proposed class, but it argues that neither of the Doe Plaintiffs are class members.  To qualify as a class representative, a plaintiff must be "part of the class and possess the same interest and suffer the same injury as class members." General Tel., 457 U.S. at 156.  Defendant points out that Doe 1, at all relevant times, and Doe 2, since June, 2004, paid flat co-payments for each of their prescription drugs, including Norvir, and, thus, never "paid all or part of the increased cost of Norvir."  After the hearing on class certification, however, Plaintiffs revised their class definition and deleted the word "increased."

United States District Court
For the Northern District of California

Defendant further points out that, during the proposed class period, Doe 2 took 1,200 milligrams of Norvir a day.  It contends that 1,200 milligrams is a stand-alone dose and not a boosting dose and, therefore, Doe 2 did not "pay for Norvir as a booster," as required for class membership.  Defendant points to the testimony of Plaintiff's expert Dr. Douglas Greer that "the patient who is using Norvir not as a booster, but as a standalone PI, that -- that would be a person not in the class."  Park Dec., Ex. A at 34:20-22; see also id. at 35:22-36:1 (agreeing that a patient taking Norvir at a 1,200 milligram daily dose, and not using Norvir as a low dose booster, would not be a member of the class).

Plaintiffs respond that Doe 1 and Doe 2 are class members.  In support of their earlier class definition, they argued that, under the collateral source rule, Doe 1 and Doe 2 are entitled to recover the amount of the Norvir price hike paid by them and on their behalf by their insurance companies and, therefore, Doe 1 and Doe 2 have legally cognizable injuries falling within the class definition.  As Plaintiffs note, courts have applied the collateral source rule in anti-trust class actions involving prescription drugs.  For example, in In re Warfarin Sodium Antitrust Litigation, 212 F.R.D. 231 (D. Del. 2002), the court approved a proposed settlement in a class action filed by consumers and third-party payors who paid all or some of the purchase price of a drug.  The court noted that some class members argued that the consumers who paid a fixed co-payment had not suffered any damages, because they paid the same for warfarin sodium regardless of whether it was a brand name or generic version.  212 F.R.D. at 259.  Although the

6

court stated that "the argument has merit," the court recognized that fixed co-payment consumers "could sue defendant for damages by invoking the 'collateral source' doctrine," and did not exclude those consumers from the class. Id.

Plaintiffs argue that this case is directly on point. It is not. In determining that fixed co-payment consumers should be allowed to share in the distribution of the settlement fund, the court relied on numerous factors, including that "to exclude fixed co-pay consumers now would require sending additional notice and a new, more complicated claim form to the consumers who have already filed claims" and "would further delay distribution to the rest of the class and result in additional administrative costs." Nonetheless, this case provides some support to Plaintiffs' argument that, under the collateral doctrine rule, Doe 1 and Doe 2 are class members.

Goda v. Abbott Labs., 1997 WL 156541 (D.C. Super. Ct.), provides additional support. There, the court found that, although the parties cited no case dealing with collateral contributions in the context of anti-trust injury, the rationale behind the collateral damages rule applied, especially "where the wrong is not mere negligence that usually harms only one person" but deliberate actions that harm many. 1997 WL 156541 at *9. The court certified a class that included consumers with fixed co-payments, so long as those consumers did not have managed care programs "whose brand-name-prescription-drug benefits are such that they negate any pass-on." Id. By certifying the class, "[e]ffective enforcement of the antitrust laws is thus promoted." Id. Not noted by Plaintiffs,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

however, is that, in <u>Goda</u>, the court certified the class and subclasses: the first subclass consisted of "consumers who are without collateral source benefits"; the second consisted of "those who have unexcluded collateral source benefits." <u>Id.</u> at *10.

Based on these cases, and the underlying policy regarding the important role that class actions play in the enforcement of anti-trust laws, the Court finds that Doe 1 and Doe 2 are not excluded from class membership merely because, under their health care plans, they paid a fixed co-payment for medication. <u>See</u> <u>In re</u> <u>Dynamic Random Access Memory Antitrust Litig.</u>, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. 2006) ("Moreover, in antitrust actions such as this one, it has long been recognized that class actions play an important role in the private enforcement of antitrust laws. Accordingly, when courts are in doubt as to whether certification is warranted, courts tend to favor class certification.") (citation omitted). Further, under Plaintiffs' revised class definition, a class member need only pay all or part of the cost of Norvir. Doe 1 and Doe 2 meet that requirement.

However, the Court finds that Doe 2 is excluded from class membership because he did not use Norvir as a booster. Rather, he consumed 1,200 milligrams of Norvir a day in combination with Saquinavir. Although Plaintiffs state that this dosage was used to "boost" the Saquinavir, they provide no evidence to support that statement. Doe 2 states that his doctor prescribed him Norvir along with the Saquinavir because they would interact, which would make a "stronger combination." As Defendant notes, this describes a cocktail combination of PIs and not use of Norvir as a "booster."

8

1   The Court finds that, like SEIU, Doe 1 is a member of the
2   proposed class; Doe 2, however, is not.

3       B.   Standing

4   Defendant argues that none of the Plaintiffs has standing to
5   bring claims under California's Unfair Competition Law or under the
6   Sherman Act and, thus, class certification is precluded.[1]
7   California's Unfair Competition Law "does not apply to actions
8   occurring outside of California that injure non-residents."
9   Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.,
10  405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005); see also Norwest
11  Mortgage, Inc. v. Sup. Ct., 72 Cal. App. 4th 214, 226 (1999)
12  (refusing to apply California's Unfair Competition Law to "injuries
13  suffered by non-California residents, caused by conduct occurring
14  outside of California's borders by actors headquartered and
15  operating outside of California").  Plaintiffs make clear that this
16  claim is brought on behalf of class members who are or have been
17  California residents during the class period.  Only one named
18  Plaintiff is a California resident: Doe 1.

19  Defendant contends that, because Doe 1 is not a class member,
20  no named Plaintiff has standing to bring this claim.  But, as
21  discussed above, the Court determines that Doe 1 is a class member.
22  Defendant further argues that Doe 1 does not have standing because
23  California's Unfair Competition Law requires that an unfair
24  competition claim must be brought by someone who "has suffered

25

26      [1]Plaintiffs' claim for unjust enrichment is based on their
    anti-trust injury; thus, if they have no standing to bring a claim
27  under the Sherman Act, their unjust enrichment claim fails.

28                                  9

injury in fact and has lost money or property as a result of such unfair competition." <u>See</u> Cal. Bus. & Prof. Code § 17204.  The section Defendant relies upon, however, concerns "Actions for Injunctions by Attorney General, District Attorney, County Counsel, and City Attorneys."  Further, the Court finds that Doe 1 has suffered an injury in fact and, therefore, he has standing to bring a claim under California's Unfair Competition Law.

Defendant's arguments that Plaintiffs lack standing to bring claims under the Sherman Act similarly fail.  To have anti-trust standing, a plaintiff must have an injury that "flows from an anticompetitive aspect or effect of the defendant's behavior." <u>Rebel Oil Co., Inc. v. Atlantic Richfield</u>, 51 F.3d 1421, 1433 (9th Cir. 1995).  As Plaintiffs note, this Court has already considered and rejected Defendant's argument that Plaintiffs claim no cognizable anti-trust injury.  <u>See</u> October 21, 2004 Order Denying Defendant's Motion to Dismiss First Amended Class Action Complaint; March 2, 2005 Order Denying Defendant's Motion to Dismiss.  Indeed, Defendant acknowledges that it raised these arguments before and that, at that time, the Court was unwilling to rule, as a matter of law, that SEIU was not a participant in the boosted market.  The Court is still unwilling to so rule.  This is a motion for class certification and "it is improper to advance a decision on the merits to the class certification stage." <u>Moore</u>, 708 F.2d at 480. Further, Defendant offers no good cause for the Court to reconsider its prior decisions.  Defendant asserts that considerable discovery has been conducted which establishes SEIU's lack of involvement in the Boosted Market, but it provides no support for that assertion

10

and ignores the exception to the market participant requirement for parties whose injuries are "inextricably intertwined" with the injuries of market participants.  See Blue Shield v. McCready, 457 U.S. 465 (1982); see also Ostrofe v. H.S. Crocker Co., 740 F.2d 739, 745-46 (9th Cir. 1984).

The Court concludes that Doe 1 has standing to bring claims under California's Unfair Competition Law and that Doe 1 and SEIU have standing to bring claims under the Sherman Act.  The Court now examines whether Plaintiffs meet the explicit requirements of Rule 23.

II.  Rule 23(a)

Rule 23(a) permits district courts to certify class actions if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  See Fed. R. Civ. P. 23(a).

A.  Numerosity

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'"  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  Where "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."  1 Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th ed. 2002).

11

United States District Court
For the Northern District of California

1  Defendant does not deny the numerosity of the class and the Court

2  finds that this prerequisite is satisfied.

3       B.   Commonality

4       "A class has sufficient commonality 'if there are questions of

5  fact and law which are common to the class.'"  Hanlon, 150 F.3d at

6  1019 (quoting Fed. R. Civ. P. 23(a)(2)).  "All questions of fact

7  and law need not be common to satisfy this rule.  The existence of

8  shared legal issues with divergent factual predicates is

9  sufficient, as is a common core of salient facts coupled with

10 disparate legal remedies within the class."  Id.  Here, the claims

11 of all class members "stem from the same source," id. at 1019-20,

12 namely, Defendant's alleged anti-competitive conduct in the pricing

13 of Norvir in order to obtain an unlawful advantage in the boosted

14 PI drug market.  The Court finds that the allegations against

15 Defendant are sufficient to satisfy the commonality prerequisite of

16 Rule 23(a)(2).

17      C.   Typicality

18      "The typicality prerequisite of Rule 23(a) is fulfilled if

19 'the claims or defenses of the representative parties are typical

20 of the claims or defenses of the class.'"  Id. at 1020 (quoting

21 Fed. R. Civ. P. 23(a)(3)).  The test for typicality is "whether

22 other members have the same or similar injury, whether the action

23 is based on conduct which is not unique to the named plaintiffs,

24 and whether other class members have been injured by the same

25 course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508

26 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282

27 (C.D. Cal. 1985)).  "[R]epresentative claims are 'typical' if they

28                                  12

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.  However, "a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" Hanon, 976 F.2d at 508 (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, 903 F.2d 176, 180 (2d Cir. 1990)).

Defendant's arguments that the named Plaintiffs' claims are not typical because Doe 1 is not a class member and because all Plaintiffs lack standing fail for the reasons discussed above.  The Court finds that the named Plaintiffs' claims and the absent class members' claims arise out of the same alleged anti-trust violations.  The named Plaintiffs and the class members have allegedly been injured by the same course of conduct.  Therefore, this prerequisite is also satisfied.

D.   Adequacy

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" Hanlon, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id.

Defendant does not dispute that Plaintiffs' counsel will prosecute this action vigorously on behalf of the class, but it

13

argues that SEIU is not an adequate class representative because it has inherently conflicting interests with individual class members. According to Defendant, SEIU and other third-party payors have an interest in paying less and, thus, prefer that their members use the lower-cost Kaletra, whereas the individual class members would prefer using the higher-priced combination of Norvir plus a competing PI.  Defendant also contends that the possible remedies for the anti-trust claim are antagonistic.

Plaintiffs respond with a supplemental declaration from their expert, who opines that SEIU's interests are the same as those of the individual Plaintiffs and that possible remedies are not antagonistic.  They point to In re Warfarin Sodium Antitrust Litigation, where the court rejected the argument "that the interests of the class members were in conflict in such a way that the District Court abused its discretion in certifying a single class including several types of injured plaintiffs."  391 F.3d at 532.  That class included the named parties, both consumers and third-party payors, who "all shared the same goal of establishing the liability of [the defendant], suffered the same injury resulting from the overpayment for warfarin sodium, and sought essentially the same damages by way of compensation for overpayment."  Id.  There, "any potential for conflicts of interest" between and among the consumers and third-party payors that may have arisen "were adequately represented by the presence of separate counsel for consumers and TPPs [third-party payors]."  Id. (finding that the existence of separate counsel "provided adequate structural protections to assure that differently situated

14

**United States District Court**
For the Northern District of California

plaintiffs negotiate for their own unique interests") (inner quotations omitted).  Here, too, there is separate counsel for the individual Plaintiffs and for SEIU.  Further, as in <u>Warfarin</u>, Defendant has "only asserted, rather than established, an inherent conflict among consumers and between consumers and TTPs." <u>Id.</u> at 533.

Because separate counsel for the different types of class members is present, the Court concludes that Doe 1 and SEIU will fairly and adequately protect the interests of the class, as will their counsel.  In an abundance of caution, however, the Court creates subclasses for individual class members and for institutional class members.  <u>Id.</u> at 533 n.14 (noting that subclasses have been usefully employed in anti-trust cases).  Doe 1 shall be the class representative of the individual class members; SEIU shall be the class representative of the institutional class members.

III.  Rule 23(b)

Having met the prerequisites of Federal Rule of Civil Procedure 23(a) for class certification, Plaintiffs are entitled to proceed on a class basis if they meet the requirements of one of the subsections of Federal Rule of Civil Procedure 23(b). Plaintiffs move for certification under both subsection (b)(2) and (b)(3).

A.  Rule 23(b)(2)

As noted above, Plaintiffs allege that Defendant's conduct violates section 2 of the Sherman Act.  Plaintiffs seek class certification under Rule 23(b)(2) of their anti-trust claim for

15

injunctive relief.  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  As Plaintiffs note, Defendant does not dispute that a nation-wide class for injunctive relief is appropriate.  And the Court finds that Defendant allegedly "has acted or refused to act on grounds generally applicable to the class."  Id.  Therefore, a nation-wide class for injunctive relief for Plaintiffs' section 2 Sherman Act claim is appropriate.

     B.   Rule 23(b)(3)

     Plaintiffs seek class certification under Rule 23(b)(3) of their claims under the common law of unjust enrichment and under California's Unfair Competition Law.[2]  See Cal. Bus. and Prof. Code § 17200, et seq.

     Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is the superior method for litigating the claims.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all

_____

     [2]As noted above, the unfair competition claim is brought on behalf of those class members who are or were California residents during the class period.

16

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

members of the class in a single adjudication, there is clear
justification for handling the dispute on a representative rather
than an individual basis." Hanlon, 150 F.3d at 1022 (internal
quotation marks omitted). "The policy at the very core of the
class action mechanism is to overcome the problem that small
recoveries do not provide the incentive for any individual to bring
a solo action prosecuting his or her rights." Amchem, 521 U.S. at
617.

   1.   Unjust Enrichment

   Plaintiffs argue that a nation-wide unjust enrichment class
should be certified. They contend that, because "common proof" can
be used to measure the restitution to which the class members would
be entitled, common questions of law and fact predominate over
questions affecting class members individually. According to
Defendant, however, the laws of the fifty States vary and the
individual issues predominate and therefore class certification of
a nation-wide unjust enrichment class is inappropriate.

   Defendant is correct in part. Although many States, including
California, follow the Restatement's definition of unjust
enrichment, not all do. See In re Terazosin Hydrochloride, 220
F.R.D. 672, 697 (S.D. Fla. 2004). Laws concerning unjust
enrichment do vary from State to State. After the hearing, the
parties submitted a letter to the Court in which they agreed that
two States, Indiana and Ohio, preclude indirect purchasers from
asserting claims for unjust enrichment and that there is no
authority in twenty-six States expressly prohibiting indirect
purchasers from obtaining unjust enrichment for violations of state

17

anti-trust statutes.    They disagree whether the law of twenty-four other States precludes indirect purchasers from recovering unjust enrichment.

Differences in state law claims can outweigh the similarities, precluding class certification as to those claims.    See Schumacher v. Tyson Fresh Meats, Inc., 221 F.R.D. 605, 612-613 (D. S.D. 2004). But differences do not always outweigh the similarities, especially in cases concerning unjust enrichment claims.    See, e.g., Westways World Travel, 218 F.R.D. at 240 (certifying nation-wide class of unjust enrichment claimants).    As noted in Schumacher,

> Where federal claims and common law claims are predicated on the same factual allegations and proof will be essentially the same, even if the law of different states might ultimately govern the common law claims -- an issue that need not and is not decided at this juncture -- certification of the class for the whole action is appropriate.    The spectre of having to apply different substantive laws does not warrant refusing to certify a class on the common-law claims.

221 F.R.D. at 612 (quotations and alteration omitted); see also Hanlon, 150 F.3d at 1022 ("Variations in state law do not necessarily preclude a 23(b)(3) action.").

Here, the variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof.    Common to all class members and provable on a class-wide basis is whether Defendant unjustly acquired additional revenue or profits by virtue of an anti-competitive premium on the price of Norvir.    See Schumacher, 221 F.R.D. at 612 ("In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs.    That is a universal thread

18

throughout all common law causes of action for unjust
enrichment.").  The "idiosyncratic differences" between state
unjust enrichment laws "are not sufficiently substantive to
predominate over the shared claims."  See Hanlon, 150 F.3d at 1022.

Defendant also argues that certification of Plaintiffs' unjust
enrichment claim should be denied because issues relating to
causation and injury will require a tremendous amount of
individualized proof.  It notes that, to obtain certification,
"plaintiffs must establish, with generalized proof, that all
members of the class suffered damage as a result of defendants'
alleged [anti-competitive conduct]." Dynamic Random Access Memory,
2006 U.S. Dist. LEXIS 39841, *40 (N.D. Cal.).  It argues that
Plaintiffs cannot make that showing here.

Plaintiffs' expert disagrees and criticizes the analysis upon
which Defendant relies.  The Court, however, "cannot weigh in on
the merits of plaintiffs' substantive arguments, and must avoid
engaging in a battle of expert testimony." Id. at *45.  Indeed,
the court in Dynamic Random Access Memory explained that, "during
the class certification stage, the court must simply determine
whether plaintiffs have made a sufficient showing that the evidence
they intend to present concerning antitrust impact will be made
using generalized proof common to the class and that these common
issues will predominate." Id. at *44-5 (inner quotations omitted).
Plaintiffs have made such a showing.

The Court finds that common questions do predominate over any
questions affecting only individual members.  The Court similarly
finds that class resolution of this claim is superior to other

19

available methods.   In anti-trust cases such as this, the damages
of individual consumers are likely to be too small to justify
litigation, but a class action would offer those with small claims
the opportunity for meaningful redress.   Further, failure to
certify the unjust enrichment claims could result in class members
having to file thousands of individual suits in which the discovery
and factual issues would be nearly identical.   And, if necessary,
sub-classes can be identified to group residents of various States
with identical common law requirements.   These problems are
manageable and, therefore, a class action is the superior method of
resolving the unjust enrichment claims.   The class, however, will
not include any indirect purchasers who were citizens of Indiana
and Ohio at the relevant time.

> 2.   Unfair Competition

As Plaintiffs note, claims brought under the California Unfair
Competition Law are commonly certified for class treatment.   <u>See</u>,
<u>e.g.</u>, <u>Corbett v. Super. Ct.</u>, 101 Cal. App. 4th 649 (2002).   Here,
the Court finds that Defendant's alleged illegal conduct presents
common questions of fact and law that will be subject to common
proof and that a class action is the superior method of resolving
Plaintiffs' unfair competition claim.   Indeed, Defendant does not
dispute that Plaintiffs' unfair competition claim meets the
requirements of Rule 23(b)(3); rather, as addressed above, it only
argues that no named Plaintiff has standing to bring this claim, an
argument the Court rejected.   Therefore, the Court finds that
Plaintiffs have met their burden under Rule 23(b).

**United States District Court**
For the Northern District of California

CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' Motion for Class Certification (Docket No. 287), and certifies the class as follows:

All persons or entities throughout the United States and its territories who purchased or paid for, or who reimbursed another person or entity who purchased or paid for, Norvir as a booster to other protease inhibitors intended for consumption by themselves, their families, or their members, employees, plan participants and beneficiaries or insureds, and who paid all or part of the cost of Norvir during the period December 3, 2003 through such time in the future as the effects of Defendant's illegal conduct, as alleged, have ceased.  Excluded from the Class is Defendant and its subsidiaries and affiliates, all government entities (except for government-funded employee benefits funds), and all persons or entities that purchase Norvir: (i) for purposes of resale, or (ii) directly from Defendant.

Within this class, the Court creates a subclass for individual class members and another subclass for institutional class members. Doe 1 shall be the class representative of the individual class members; SEIU shall be the class representative of the institutional class members.  If necessary, the Court will create subclasses for those who paid a fixed co-payment for Norvir and those who did not and for the unjust enrichment claims.  Indirect purchasers from Ohio and Indiana, however, will be precluded from recovering for unjust enrichment and thus shall not be part of any unjust enrichment subclass.

21

1    The Court appoints Plaintiffs Doe 1 and SEIU as class

2  representatives.  The law firm of Berman DeValerio Pease Tabacco

3  Burt & Pucillo is appointed as counsel for the class and for the

4  subclass of individual class members; the law firm of Labaton

5  Sucharow & Rudoff LLP is appointed as counsel for the class and for

6  the subclass of the institutional class members.[3]

7    IT IS SO ORDERED.

8            6/11/07

9  Dated: _____          _____
                                                 CLAUDIA WILKEN
10                                               United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27    [3]Defendant's Motion for Leave to File Supplementary Authority
     (Doc. 344) is DENIED.

28                                  22