Joseph J. Tabacco, Jr. (75484)
Christopher T. Heffelfinger (118058)
James C. Magid (233043)
**BERMAN DEVALERIO PEASE TABACCO
  BURT & PUCILLO**
425 California Street, Suite 2100
San Francisco, CA  94104-2205
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382

**Co-Lead Class Counsel and Counsel for Plaintiffs
John Doe 1, John Doe 2, and Individual Class Members,**

Hollis Salzman (HS-5994)
Michael W. Stocker (179083)
Kellie Safar Lerner (KL-0927)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477

**Co-Lead Class Counsel and Counsel for Plaintiffs Service
Employees International Union Health and Welfare Fund
and Institutional Class Members**

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| IN RE ABBOTT LABORATORIES NORVIR ANTITRUST LITIGATION | No. C-04-1511 CW <br><br> **PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Hearing: August 19, 2008 <br> Court: Courtroom 2, 4th Floor <br> Before: Honorable Claudia Wilken <br><br> [Time shortened by Order dated July 31, 2008] |

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I. INTRODUCTION ............................................................................................................1

II. NATURE OF THE LITIGATION ..................................................................................2

    A. Procedural History ..................................................................................................3

    B. Abbott's Denial Of Wrongdoing .............................................................................4

III. SUMMARY OF THE SETTLEMENT TERMS ............................................................4

    A. Definition of "Prevailing Party" .............................................................................5

    B. The Settlement Amount ..........................................................................................6

    C. Release ....................................................................................................................7

    D. Abbott's Right to Terminate ...................................................................................8

IV. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT ..................................................................................................................8

    A. Standards For Approval ..........................................................................................8

    B. The Proposed Settlement Satisfies The Requirements For Preliminary Approval .................................................................................................................9

        1. The Settlement Negotiations Occurred At Arm's-Length. ........................9

        2. Plaintiffs' Counsel Engaged In Sufficient Discovery To Make An Informed Judgment Concerning The Merits Of Their Claims.................9

        3. The Proponents Of The Settlement Are Highly Experienced Class Action Litigators. ......................................................................................11

        4. The Settlement Amount Is Within The Range Of Possible Approval. ....11

V. CONCLUSION ................................................................................................................15

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT    i

# TABLE OF AUTHORITIES

**Cases**

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) ..................................................8

*Florida Trailer & Equip. Co. v. Deal*, 284 F.2d 567 (5th Cir. 1960) ........................................8

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) ....................13

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807
    (E.D. Pa. May 11, 2004) ..................................................................................................14

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ............................................................9

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957 (N.D. Ga. 1980) .............................................8

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ..............................8

*In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) .................................14

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ..........................13

*In re Three Mile Island Litig.*, 557 F. Supp. 96 (M.D. Pa. 1982) ............................................12

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........................................9

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ........................................................................12

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ...................................................12

*Meijer Inc. v. 3M*, Civ. A. No. 04-5871, 2006 WL 2382718, *20
    (E.D. Pa. Aug. 14, 2006) .................................................................................................14

*Schor v. Abbott Laboratories*, 457 F.3d 608 (7th Cir. 2006) ...................................................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................................11

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981) ............................................................................12

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ............12

*State of New York ex rel. Koppell v. Keds Corp.*, No. 93 CIV. 6708 (CSH),
    1994 WL 97201 (S.D.N.Y. Mar. 21, 1994) .....................................................................13

**Statutes**

15 U.S.C. § 2 .................................................................................................................1, 3

28 U.S.C. 1292(b) ..............................................................................................................4

Federal Rule of Civil Procedure 23(a), (b) (2), and (b) (3)..............................................3

Federal Rule of Civil Procedure 23(c) (2) and (e) ...........................................................2

Federal Rule of Civil Procedure 23(e) ..........................................................................1, 8

California Bus. & Prof. Code § 17200...............................................................1, 3, 5, 14

**Other Authorities**

Jan Vandemoortele and Enrique Delmonica, *The Education Vaccine Against HIV*, Current Issues in Comparative Education, Vol. 3(1) (December 2000). ..............................................13

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT     iii

1  **TO:  ALL PARTIES**

2  <u>**NOTICE OF MOTION**</u>

3  PLEASE TAKE NOTICE that on August 19, 2008, at 2:00 p.m. in the courtroom of
4  The Honorable Claudia Wilkin, United States District Judge, Courtroom 2, 4th Floor, 1301
5  Clay Street, Oakland, California, or soon thereafter as the matter may be heard, Plaintiffs will
6  move for preliminary approval of Class Action Settlement.  By Order dated July 31, 2008, the
7  Court ordered that the parties file this motion for preliminary approval by no later than August
8  13, 2008, and that the hearing be set for August 19, 2008.

9  PLEASE TAKE FURTHER NOTICE that pending the Court's further review of the
10 Class Notice and Settlement Agreement, all proceedings in the Action, other than proceedings
11 pursuant to the Settlement, shall be stayed pending the hearing, pursuant to Rule 23(e) of the
12 Federal Rules of Civil Procedure, to determine the fairness, reasonableness, and adequacy of
13 the proposed Settlement and whether it should be finally approved ("Final Approval
14 Hearing"), and all Class Members shall be enjoined from commencing any other action based
15 upon any of the claims at issue in the Action.

16 This motion is based on this Notice of Motion, the Court's Order dated July 31, 2008,
17 the Memorandum of Points and Authorities submitted herewith, the Declaration of
18 Christopher T. Heffelfinger and all exhibits submitted herewith, including the Settlement
19 Agreement, and such representations by both Plaintiffs' and Defense counsel as may be made
20 at the hearing.

21 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

22 **I.   INTRODUCTION**

23 This case arises from allegations that Abbott Laboratories, Inc. ("Abbott") violated the
24 Sherman Act  § 2 (15 U.S.C. § 2), Unfair Competition Law, California Bus. & Prof. Code
25 § 17200, *et seq.*, and the common law of unjust enrichment.  The alleged violations are based
26 on Abbott's price increase of Norvir® ("Norvir") by 400%, which was designed, *inter alia*, to
27 and did in fact stifle competition in the market for Kaletra® ("Kaletra"), injuring consumers
28

1   and Third-Party Payors[1] ("TPPs").  After more than four years of hard-fought litigation, the
2   parties have now entered into a Settlement Agreement, attached as Exhibit A to the
3   Declaration of Christopher T. Heffelfinger ("Heffelfinger Decl."), seeking a global resolution
4   of this case.

5   For the reasons set forth herein, Plaintiffs respectfully submit that the Court should
6   preliminarily approve the proposed settlement encompassed in the Settlement Agreement (the
7   "Settlement") and schedule a fairness hearing to consider final approval of the Settlement.  *See*
8   FED. R. CIV. P. 23(c) (2) and (e).

9   **II.    NATURE OF THE LITIGATION**

10   Plaintiffs allege that Abbott attempted to stifle competition in the market for a class of
11   antiviral drugs used to treat HIV.  Antiviral drugs interfere in the reproductive processes of
12   HIV viruses, unlike drugs that just treat the symptoms of viral disease.  Innovation in the area
13   of drugs used to treat HIV is crucial because the HIV virus quickly becomes resistant to
14   existing treatments.  In the early years of the HIV epidemic, the virus that causes AIDS spread
15   virtually unchecked because of the lack of effective therapies.  In the mid-1990s, researchers
16   developed protease inhibitors ("PIs"), a new class of drugs that made great inroads in
17   prolonging the lives of people suffering from the disease.  Indeed, PIs were considered the
18   most potent class of drugs used to combat the HIV virus.  *See* Order Denying Defendant's
19   Renewed Motion for Summary Judgment, dated July 6, 2006.

20   Norvir, a PI drug introduced by Abbott in 1996, is the brand name of a compound
21   patented by Abbott called ritonavir.  *Id.* at 2.  At its introduction, Norvir was used as a PI at a
22   daily recommended dose of 1,200 milligrams (twelve 100-mg capsules a day).  *Id.*  However,
23   due to the severe side effects associated with the use of Norvir at this high dosage, the drug
24   was never successful as a PI.

---

[1] A Third-Party Payor means any entity that is: (a) a party to a contract, issuer of a policy, or sponsor of a plan, and (b) at risk, under such contract, policy, or plan, to pay all or part of the cost of prescription drugs dispensed to covered natural persons.

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT    2

1  Following Norvir's release, scientists discovered that when the drug was administered
2  in very small quantities together with other PIs, Norvir could "boost" the antiviral properties
3  of the other PIs. *Id.* at 2. Not only did a small dose of Norvir, about 100 to 400 milligrams
4  per day, make other PIs more effective and decrease side effects associated with high doses
5  when used in combination with other PIs, but it also slowed down the rate at which the HIV
6  virus could mutate and develop resistance to the effects of PIs. *Id.* The use of Norvir as a
7  "booster" for PIs dramatically extended the lives of people with HIV. *Id.*

8  In 2000, Abbott introduced Kaletra, a drug containing a protease inhibitor called
9  lopinavir along with a boosting dose of ritonavir (the active ingredient of Norvir) in a single
10 pill. *Id.* at 2. Kaletra soon gained the largest market share of any boosted PI. *Id.* However,
11 by the summer of 2003, Kaletra's market share had reached its peak. Two powerful new PIs
12 that required boosting with Norvir, Bristol-Myers Squibb's Reyataz® and GlaxoSmithKline's
13 Lexiva®, were soon scheduled to be introduced. *Id*.

14 On December 3, 2003, Abbott raised the wholesale price of Norvir by 400 percent (*id.*
15 at 3), but it did not increase the price of the ritonavir component contained in its drug Kaletra.
16 Plaintiffs allege that by means of the Norvir price hike, Abbott intended to unlawfully use its
17 monopoly in the Norvir market to monopolize or attempt to monopolize the market for PIs
18 when boosted by Norvir, and, thus, halt the decline of Kaletra's market share.

19 **A.** **Procedural History**

20 This action was brought as a class action pursuant to Federal Rule of Civil Procedure
21 23(a), (b) (2), and (b) (3). On June 11, 2007, the Court certified a Class of consumers and
22 TPPs to bring nationwide claims for injunctive relief under the Sherman Act § 2 (15 U.S.C. §
23 2), and damages claims under California's Unfair Competition Law, California Bus. & Prof.
24 Code § 17200, *et seq.* and the common law of unjust enrichment in 48 states. In its May 16,
25 2008 Order Denying In Part Abbott's Motion for Summary Judgment and Granting Plaintiffs'
26 Cross-Motion for Summary Judgment, the Court rejected Abbott's patent immunity defense
27 and dismissed Plaintiffs' unjust enrichment claims. The Court allowed the remaining claims
28 to proceed to trial.

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT      3

**B.     Abbott's Denial Of Wrongdoing**

Abbott asserts a variety of defenses and denies any wrongdoing or legal liability with regard to any and all of the claims asserted in this litigation. Abbott contends, for example, that it is not liable under the antitrust laws for raising the price of its patented drug, because of its the good-faith belief in the validity of its patents. In essence, Abbott contends that, because it had a good faith belief that its patents covered the relevant market in this case, it could legally exclude competitors. Abbott also contends that it never possessed a market share in the relevant antitrust market sufficient to support a claim of actual monopolization, and that Plaintiffs are unable to meet evidentiary requirements for certain antitrust cases set out in *Cascade Health Solutions v. Peacehealth*, 515 F.3d 883 (9th Cir. 2008). Abbott nevertheless desires to settle the class action claims asserted on the terms and conditions set forth in the Settlement, for the purpose of avoiding the burden, expense, and uncertainty of trial, and to put to rest the controversies advanced by the litigation.

Prior to reaching a resolution, the parties had exchanged written discovery requests, produced and reviewed over half a million pages of documents, took dozens of depositions, briefed dispositive motions, hired and deposed experts, investigated applicable law, and engaged party representatives in numerous meetings and conferences. Following several mediation sessions with Hon. Edward A. Infante (Ret.), a nationally-recognized mediator, and numerous direct negotiations between counsel, Plaintiffs and Abbott have executed a Settlement, dated August 13, 2008. Under the terms of the Settlement, subject to Court approval, Abbott will pay between $10,000,000 and $27,500,000, depending on the outcome of the Ninth Circuit's determination of a Section 1292 interlocutory appeal. The Settlement, which contemplates both a *cy pres* distribution as well as, under certain circumstances, cash disbursements to California Class Members, constitutes a good and fair result, given the totality of the circumstances facing Plaintiffs and the Class.

**III.   SUMMARY OF THE SETTLEMENT TERMS**

The Settlement provides that the parties will, pursuant to 28 U.S.C. 1292(b), jointly move for certification of an interlocutory appeal on the following three issues, preceded by an

introductory paragraph, stemming from the Court's summary judgment orders dated July 6, 2006 and May 16, 2008, and on other orders on Abbott's dispositive motions:

> In this case, Plaintiffs have alleged that Abbott's pricing decisions in December 2003 violated the Sherman Act under a monopoly-leveraging theory, and California Unfair Competition Law under Business & Professions Code §§ 17200, *et seq.*, and further, that such conduct unjustly enriched Abbott. Plaintiffs claim that Abbott raised the price of a patented drug (Norvir) by 400% (representing a $6.84 increase per 100mg daily dose) in one alleged market (the Booster Market) in an effort to create or maintain a monopoly for another Abbott drug known as Kaletra in a separate alleged market (the Boosted Market). Norvir's active ingredient is called "ritonavir." Kaletra is a co-formulated product that includes both ritonavir and a protease inhibitor known as "liponavir." The three proposed interlocutory issues are:
>
> <u>Issue One</u>: Whether, as a matter of law, a plaintiff can establish antitrust injury based on the payment of an increased price for a patented product in the leveraging market, where the plaintiff contends the price increase was designed to maintain or create a monopoly in the leveraged market?
>
> <u>Issue Two</u>: Whether, as a matter of law, a plaintiff can potentially establish monopoly power – in a case where the defendant allegedly used exclusionary pricing to slow a market share decline – where some existing competitors have increased both their market share and prices since the challenged pricing decision?
>
> <u>Issue Three</u>: Whether the Ninth Circuit's decision in *Cascade Health Solutions v. Peacehealth*, 515 F.3d 883 (9th Cir. 2008), mandates judgment against a monopoly leveraging claim based on unilateral pricing conduct where there is no allegation of below cost pricing?

The Settlement is contingent on the Court's final approval and certification of all three issues for interlocutory review under a Section 1292(b), and the Ninth Circuit's acceptance of at least two of these issues for review.

Abbott will be entitled to final judgment, with prejudice, on all individual and class-wide claims in the case if Abbott prevails on appeal (as defined below).

A. **Definition of "Prevailing Party"**

For Abbott to prevail on appeal, the Ninth Circuit must accept the substance of Abbott's position on at least one of the issues accepted by the Ninth Circuit on appeal. For example:

1. For Issue One, Abbott will be deemed the Prevailing Party if the Ninth Circuit holds, in substance, that Plaintiffs cannot establish antitrust injury under the law based on the price increase for Norvir;

2. For Issue Two, Abbott will be deemed the Prevailing Party if the Ninth Circuit holds that under the appropriate legal standard, Plaintiffs cannot establish monopoly power under the circumstances of this case;

3. For Issue Three, Abbott will be deemed the Prevailing Party if the Ninth Circuit holds that a showing of below-cost pricing is necessary for the type of Sherman Act claims alleged in this case; and

4. Abbott will also be deemed a Partially-Prevailing Party if, without reaching a decision falling within (1), (2) or (3), the Ninth Circuit reverses or vacates any challenged ruling or order by the Court and remands any matter or issue to the Court for reconsideration or further review based upon a legal or factual standard enunciated by the Ninth Circuit that differs from any standard applied by the Court.[2]

The final decision from the Ninth Circuit, including any rehearing decision, will determine whether Abbott is the Prevailing Party. To the extent Abbott does not prevail or partially prevails based on the criteria set forth above, Plaintiffs will be deemed the Prevailing Party.

**B.   The Settlement Amount**

If the Ninth Circuit accepts at least two issues for interlocutory appeal (or only one issue and Abbott declines to terminate the Settlement), Abbott will, within 10 business days of the Ninth Circuit's order, provide a non-refundable payment to the Class in the sum of $10 million (the "Initial Payment"). The Initial Payment (net of Court-authorized deductions for attorneys' fees, costs and incentive awards) shall be distributed at the conclusion of the appellate process under the Settlement, on a *cy pres* basis, to one or more qualified 501(c)(3)

---

[2] In this circumstance, Abbott will pay one-fourth of the Final Payment amount to be distributed in the same manner as detailed below.

1  non-profit institution(s) benefiting individuals with AIDS/HIV, as enumerated in the
2  Settlement Agreement. A portion of this amount shall be allocated to non-profit organizations
3  for HIV educational purposes.

4  If Plaintiffs are the Prevailing Party on appeal, Abbott will pay an additional $17.5
5  million (the "Final Payment"), for a total of $27.5 million. The allocation of the Initial ($10
6  million) and Final Payment ($17.5 million), net any Court-authorized deductions for
7  attorneys' fees, costs and incentive awards, is as follows: (1) 70% will be distributed on a *cy
8  pres* basis to the list of organizations set out in the Settlement Agreement; and (2) 30% will be
9  allocated to Settlement Class Members who are consumers and TPPs who purchased Norvir in
10 California and who file valid and timely claims..

11 **C.    Release**

12 The Settlement Agreement releases any claims, demands, actions, causes of action or
13 liability of any nature, whether known or unknown, derivative or direct, suspected or
14 unsuspected, accrued or unaccrued, asserted or unasserted, whether in law or in equity,
15 including, without limitation, claims which have been asserted or could have been asserted in
16 the Action, or any litigation against Abbott arising out of the matters alleged in the Action that
17 any Releasor (defined as any Plaintiff or Class Members) now has, ever had, could have had
18 or may have had as of the date this Settlement Agreement is executed (whether or not such
19 Releasor objects to settlement and whether or not he/she or it makes a claim upon or
20 participates in the Settlement Fund, whether directly, representatively, derivatively or in any
21 other capacity), and that all Abbott shall be forever released and discharged from any and all
22 liability in respect of the Released Claims. Notwithstanding the above, no claims alleging
23 damages and/or seeking non-monetary relief cause by the failure of Norvir to be safe and/or
24 effective or alleging other conduct not related to, or arising from, claims of the type alleged or
25 argued in the Action, including, without limitation, claims asserted in the Direct Actions,
26 personal injury claims, product defect claims, securities claims, breach of contract claims,
27 breach of warranty claims, negligence claims, tort claims, are Released Claims.
28

**D.      Abbott's Right to Terminate**

Abbott retains the right to terminate the Settlement if: (1) the Court does not grant preliminary approval of the Settlement; (2) the Court does not agree to certify all three issues for a Section 1292 interlocutory appeal; (3) the Ninth Circuit does not accept at least two issues for a Section 1292 interlocutory appeal; or (4) the Court or the Ninth Circuit materially modifies one or more of the three proposed issues for appeal.

If Abbott elects to terminate the Settlement, it must do so in writing within seven (7) business days of the date of the relevant court order. In that event, the appeal will be voluntarily dismissed and Abbott will have no obligation to make any payments under the Settlement. The parties will also promptly ask the Court to reset the date for trial on the next available trial date convenient to the Court, on the basis of the pretrial proceedings that have already occurred.

**IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT**

**A.      Standards For Approval**

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of any settlement of a certified class action. Approval of a proposed settlement in a class action is discretionary with the court. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1176-77 (8th Cir. 1995). To warrant the court's approval, "it is well settled that a proposed settlement, taken on the whole, need only be fair, adequate, and reasonable in light of the interests of all the parties and not the product of fraud or collusion." *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 960 (N.D. Ga. 1980). In making such a determination, the court should not engage in a trial on the merits. The policy favoring settlements could not be achieved "'if the test on hearing for approval meant establishing success or failure to a certainty.'" *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981) (quoting *Florida Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960)).

### B. The Proposed Settlement Satisfies The Requirements For Preliminary Approval

#### 1. The Settlement Negotiations Occurred At Arm's-Length.

Here, the Settlement was reached after prolonged and vigorous arm's-length negotiations by experienced counsel on both sides and with the aid of Judge Infante, a highly respected mediator who is a former Chief Magistrate Judge of the U.S. District Court, Northern District of California. Heffelfinger Decl. at ¶¶ 9-11. The Settlement was negotiated over a period of months and was ultimately concluded with the mediation assistance of Judge Infante. Heffelfinger Decl. at ¶¶ 10-11. Because of the extensive bargaining process employed throughout the settlement process, there can be little doubt that the Settlement was the product of good-faith and vigorous negotiations.

#### 2. Plaintiffs' Counsel Engaged In Sufficient Discovery To Make An Informed Judgment Concerning The Merits Of Their Claims.

The stage of the proceedings and the amount of discovery completed at the time a settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness. "'Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (internal citation omitted)).

Plaintiffs' counsel here certainly had an appreciation of the merits before reaching the Settlement. Counsel have been actively engaged in this litigation for over four years and have diligently and aggressively pursued the necessary discovery. Plaintiffs' counsel reviewed in excess of over half a million pages of documents produced by Abbott and third-parties, as well as many volumes of depositions, exhibits, and testimony produced in the state Attorneys General investigation. Heffelfinger Decl. at ¶ 5. Plaintiffs also deposed over a dozen witnesses comprised of former Abbott employees, third parties, and medical and economic

1  experts. Heffelfinger Decl. at ¶ 6. Plaintiffs' counsel further engaged two expert testifying
2  witnesses. Heffelfinger Decl. at ¶ 7.

3  As the Court is aware, the parties also engaged in extensive motion practice.
4  Heffelfinger Decl. at ¶ 8. Despite having a factually well-developed case, both sides still face
5  significant uncertainties because of the novelty and difficulty of the factual and legal issues.
6  By virtue of the proposed interlocutory appeal, this Settlement puts an end to those significant
7  risks and uncertainties, while at the same time providing settlement benefits and preserving the
8  right to test Plaintiffs' legal theories and to potentially receive a larger settlement amount.

9  In the event of a trial, Abbott would contend that Plaintiffs are unable to meet their
10 burden of proof because of: (1) the purportedly declining market share of Kaletra; (2) the
11 purported fact that Reyataz® now has more prescriptions per month than Kaletra; (3)
12 testimonial evidence regarding Abbott's business justification for raising the price of Norvir;
13 (4) Abbott's internal documents, which Abbott interprets to be exculpatory; (5) case law
14 rejecting pricing restrictions as a component of injunctive relief; and (6) Abbott's good faith
15 belief in the validity of its patents.

16 Moreover, even if Plaintiffs were able to obtain a favorable judgment from this Court
17 and received all of the relief that they are seeking, Plaintiffs recognize that there is a risk of a
18 reversal on appeal. As an additional layer of risk, even if Plaintiffs were to receive a favorable
19 ruling from the Ninth Circuit, the Supreme Court could grant certiorari in light of the
20 potential conflict between any favorable Ninth Circuit ruling and the Seventh Circuit's ruling
21 in *Schor v. Abbott Laboratories*, 457 F.3d 608 (7th Cir. 2006), wherein it affirmed dismissal of
22 a similar class action alleging Sherman Act violations based on Abbott's December 2003 price
23 increase for Norvir.

24 The Settlement eliminates these risks. If the Settlement is approved and the Ninth
25 Circuit accepts the proposed interlocutory appeal, the Class will receive immediate relief (in
26 the form of the Initial Payment) and the possibility of more relief after the Ninth Circuit rules
27 on the merits (the Final Payment). Absent a settlement, and even if Plaintiffs were to prevail
28 at trial and on appeal, the Class might not receive any relief for years. Consequently, the

circumstances and attendant risks favor settlement here. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 3. The Proponents Of The Settlement Are Highly Experienced Class Action Litigators.

Plaintiffs' counsel have considerable experience in handling complex class actions in general, and antitrust, prescription drug and consumer class actions in particular. The Court has previously determined that Plaintiffs' counsel are adequate counsel for the Class. *See* Docket Entry # 345. Given this experience, Plaintiffs' counsel have developed in-depth knowledge of the applicable law and facts of the case. For purposes of this preliminary approval motion, experienced and competent counsel believe that the proposed settlement, in the circumstances of this case, is fair, reasonable and adequate. This factor heavily favors preliminary approval.

### 4. The Settlement Amount Is Within The Range Of Possible Approval.

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. An all cash settlement of $10,000,000 - $27,500,000, however, represents a significant recovery under the specific circumstances of this case.

The all cash Settlement provides for a *cy pres* payment and, under certain circumstances, a cash reimbursement for California Class Members. Specifically, the *cy pres* distribution will be used to fund charitable, educational and public interest projects that provide important benefits for the HIV patient community.[3] In selecting not-for profit organizations that would receive *cy pres* funds under the proposed Settlement, Plaintiffs proposed a list of beneficiaries to which Abbott agreed. Based on the Class definition and the

---

[3] If and when the Ninth Circuit accepts two or more issues for interlocutory appeal (or if the Ninth Circuit accepts only one issue and Abbott does not terminate the Settlement), the parties shall jointly request (a) a date by which they will file a motion for approval of Class Notice and Plan of Notice to the Class; (b) a schedule for Class Members to exclude themselves from the Class; (c) a schedule for the submission of briefing by any Class Member who seeks to object to the Settlement; and (d) a schedule for Final Approval of the Settlement. Plaintiffs will also move the Court for a schedule to submit an application for attorneys' fees, costs and incentive awards.

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT     11

1  claims remaining in the case, the parties sought out not-for-profit organizations that provide
2  direct services to people with HIV and entities that provide educational and public policy work
3  regarding HIV/AIDS in California and throughout the nation.

4        The list of proposed beneficiaries set out in the Settlement Agreement was assembled
5  by Plaintiffs' counsel, with advice from representatives of the SEIU Fund and from those
6  active in HIV/AIDs policy and activism.  The final list was then made available for Abbott's
7  review.  In assembling the list, Plaintiffs selected not-for-profit entities that serve diverse
8  populations, including gay men, women, African Americans and Latinos.  The organizations
9  are also diverse geographically, covering the entire country including urban areas hit hardest
10 by the HIV epidemic and rural areas with the highest rates of new infections.  Depending on
11 the funds ultimately available, the list of groups is large and diverse enough to provide a broad
12 range of projects yet small enough that the funds allocated to each group will have a
13 significant impact.

14       The Ninth Circuit and other courts have recognized that *cy pres* distributions are
15 proper and frequently part of class action settlements.  *See, e.g., Six (6) Mexican Workers v.*
16 *Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) (permitting use of *cy pres* distribution,
17 generally, but disapproving of *cy pres* ordered as part of a judgment, not a negotiated
18 settlement, absent a defined purpose, distribution procedure, and assurances that the class
19 itself would benefit); *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (approving *cy pres*
20 contribution to legal aid foundation); *In re Three Mile Island Litig.*, 557 F. Supp. 96, 97 (M.D.
21 Pa. 1982) (approving settlement provided for $20 million to claimants and $5 million to
22 finance public health studies and evacuation planning).

23       In cases like this, where it will be difficult to identify consumer Class Members – HIV
24 patients who may wish to keep their diagnosis confidential – a *cy pres* distribution is
25 particularly useful.  *See, e.g., Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997)
26 (finding *cy pres* recovery ideal where "it is difficult or impossible to identify the persons to
27 whom damages should be assigned or distributed"); *Simer v. Rios*, 661 F.2d 655, 675 (7th Cir.
28 1981) (finding *cy pres* recovery useful where class members "are not likely to come forward

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT     12

and prove their claims or cannot be given notice of the case"); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1031-32 (N.D. Ill. 2000) (approving *cy pres* contribution where class includes undocumented persons who may be reluctant to seek settlement benefits regardless of how simple the claims procedures).[4]  The *cy pres* distribution is, thus, particularly appropriate in this case given the challenges associated with identifying consumer Class Members.

The *cy pres* contribution will also benefit TPP Class Members.  It is well-settled that greater education and awareness about the spread of HIV is critical to reducing the infection rate.  *See, e.g.,* Jan Vandemoortele and Enrique Delmonica, *The Education Vaccine Against HIV*, Current Issues in Comparative Education, Vol. 3(1) (December 2000).  By funding non-profit institutions that provide support and guidance to individuals with HIV conditions, including those that provide HIV educational programs, the Settlement will serve to decrease, hopefully significantly, the rate of HIV infection, thereby lowering TPP expenses due to the reduced number of covered individuals for whom they would have to pay or reimburse for HIV medications.  In addition, the substantial *cy pres* payments provided by this Settlement are a reasonable substitute for the injunctive relief sought by Plaintiffs in this case.  Crafting appropriate injunctive relief for the Class would be challenging here because the conduct at issue concerns Abbott's pricing, and Abbott contends that courts generally have been reluctant to enter injunctions that regulate pricing.  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125

---

[4] Further, antitrust class actions often aggregate the relatively small claims of consumers in order to attack wrongful business practices, so it is not unusual for there to be settlement in an amount that, for practical purposes, cannot be distributed directly to class members.  For example, in *State of New York ex rel. Koppell v. Keds Corp.*, No. 93 CIV. 6708 (CSH), 1994 WL 97201 (S.D.N.Y. Mar. 21, 1994), over five million purchasers of Keds shoes suffered damages between $1 and $1.25 per pair due to alleged price-fixing.  The Attorneys General of the fifty states brought a consumer antitrust action and settled it for injunctive and monetary relief in the amount of $7.2 million.  Of the $7.2 million, $5.7 million was distributed to the fifty states, and through the states to designated charities or to any other charity benefiting women aged 15 to 44, the population that primarily purchased the price-fixed shoes.  The court held that "[i]n these circumstances, the *cy pres* resolution adopted by the settlement agreements is reasonable and adequate."  *Id*. at *3.  Given the size of the class and the small size of any individual recovery, the cost of identifying and administering any claims process would consume the entire settlement.

1  F.3d 1195, 1225 (9th Cir. 1997).  The *cy pres* payments to HIV-related entities resolve this
2  issue in a manner that meaningfully benefits the entire Class.
3        The Settlement also provides that, should Plaintiffs prevail on appeal, 30% of the
4  combined Initial and Final Payments (net attorneys' fees, costs and incentive awards) shall be
5  allocated for those Settlement Class Members (both consumers and TPPs) who seek relief
6  under California Business & Professions Code Section 17200.  This amount, excluding the *cy*
7  *pres* value of the Settlement, represents 6% of Plaintiffs' best estimate of Abbott's sales of
8  Norvir in California during the Class Period, which is an excellent result.  *See, e.g., Meijer*
9  *Inc. v. 3M*, Civ. A. No. 04-5871, 2006 WL 2382718, *20 (E.D. Pa. Aug. 14, 2006) (settlement
10 represented 2% of settling defendant's sales to class members); *In re Linerboard Antitrust*
11 *Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (settlements represented 2.0% and 1.62% of
12 settling defendant's sales to class members); *In re Auto. Refinishing Paint Antitrust Litig.*,
13 MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) (two settlements represented a
14 total of 2% of sales).
15 / / /
16 / / /
17 / / /
18
19
20
21
22
23
24
25
26
27
28

## V. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and schedule a Fairness Hearing to consider final approval of the proposed Settlement.

Dated:  August 13, 2008                             Respectfully submitted,

| | |
|---|---|
| **BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO** | **LABATON SUCHAROW LLP** |
| By: /s/ Christopher T. Heffelfinger<br>    CHRISTOPHER T. HEFFELFINGER | By: /s/ Hollis L. Salzman<br>    HOLLIS L. SALZMAN |
| Joseph J. Tabacco, Jr. (75484)<br>James C. Magid  (233043)<br>425 California Street, Suite 2100<br>San Francisco, CA  94104-2205<br>Telephone: (415) 433-3200<br>Facsimile:  (415) 433-6382 | Michael W. Stocker (179083)<br>Kellie Lerner (KL-0927)<br>140 Broadway<br>New York, NY 10005<br>Telephone: (212) 907-0700<br>Facsimile:  (212) 818-0477 |
| **Co-Lead Class Counsel and Counsel for Plaintiffs John Doe 1, John Doe 2 and Individual Class Members** | **Co-Lead Class Counsel and Counsel for Plaintiffs Service Employees International Union Health and Welfare Fund and Institutional Class Members** |
| Richard R. Wiebe<br>**LAW OFFICE OF RICHARD R. WIEBE**<br>425 California Street, Suite 2025<br>San Francisco, CA  94104<br>Telephone:  (415) 433-3200<br>Facsimile:  (415) 433-6382 | Joseph Lipofsky<br>Robert S. Schachter<br>Paul Kleidman<br>**ZWERLING, SCHACHTER & ZWERLING, LLP**<br>41 Madison Avenue<br>New York, NY 10010<br>Telephone: (212) 223-3900<br>Facsimile:  (212) 371-5969 |
| **Counsel for Plaintiffs John Doe 1, John Doe 2 and Individual Class Members** | **Counsel for Plaintiff Service Employees International Union Health and Welfare Fund** |

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT        15

| | |
|---|---|
| 1 | David S. Nalven |
| 2 | Debra A. Gaw |
|   | **HAGENS BERMAN SOBOL** |
| 3 | **SHAPIRO LLP** |
|   | One Main Street, 4th Floor |
| 4 | Cambridge, MA 02142 |
|   | Telephone: (617) 482-3700 |
| 5 | Facsimile: (617) 482-3033 |
| 6 | |
|   | **Counsel for Plaintiff Service Employees** |
| 7 | **International Union Health and Welfare** |
|   | **Fund** |

1  David S. Nalven
   Debra A. Gaw
2  **HAGENS BERMAN SOBOL**
   **SHAPIRO LLP**
3  One Main Street, 4th Floor
   Cambridge, MA 02142
4  Telephone: (617) 482-3700
5  Facsimile: (617) 482-3033

6  **Counsel for Plaintiff Service Employees**
7  **International Union Health and Welfare Fund**

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

702528 v1
[8/13/2008 18:13]

[C-04-1511 CW] PLAINTIFFS' NOTICE OF MOTION AND MEMO OF P&A IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT    16