COUNSEL ON SIGNATURE PAGE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| | **Case No. 04-1511 (CW)** |
| IN RE ABBOTT LABORATORIES NORVIR ANTITRUST LITIGATION | **JOINT MOTION TO CERTIFY ISSUES FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)** |
| | HONORABLE CLAUDIA WILKEN |
| | Date:   August 19, 2008 |
| | Time:   2:00 PM |
| | Place:  Courtroom 2, 4th Floor |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION ....................................................................................................... 1

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

I.     Immediate Appeal On The Three Issues Will Necessarily Terminate The
Litigation. ............................................................................................................... 3

II.    The Proposed Issues For Appeal Involve Controlling Questions Of Law On
Which There Is Substantial Ground For Difference Of Opinion. ............................. 4

    A.    Issue One Involves A Controlling Question Of Law On Which There
Is A Substantial Ground For Difference Of Opinion. ................................... 5

        1.    Whether Plaintiffs Can Show Antitrust Injury Involves A
Controlling Question Of Law. ........................................................ 5

        2.    There Is A Substantial Ground For Difference Of Opinion On
Whether Plaintiffs Can Show Antitrust Injury. ............................... 6

    B.    Issue Two Involves A Controlling Question Of Law On Which There
Is A Substantial Ground For Difference Of Opinion. ................................... 7

        1.    Whether Plaintiffs Can Show Monopoly Power Under The
Circumstances Of This Case Involves A Controlling Question
Of Law. .......................................................................................... 7

        2.    There Is A Substantial Ground For Difference Of Opinion On
Whether Plaintiffs Can Show Monopoly Power Under The
Circumstances Of This Case. .......................................................... 8

    C.    Issue Three Involves A Controlling Question Of Law On Which There
Is A Substantial Ground For Difference Of Opinion. ................................... 9

        1.    Whether Plaintiffs Need To Allege And Prove Below-Cost
Pricing In This Case Involves A Controlling Question Of Law. ......... 9

        2.    There Is A Substantial Ground For Difference Of Opinion On
Whether Plaintiffs Need To Allege And Prove Below-Cost
Pricing In This Case. ...................................................................... 10

CONCLUSION .................................................................................................................. 11

1

# TABLE OF AUTHORITIES

**Page(s)**

2 CASES

3
Blue Shield of Va. v. McCready,
4    457 U.S. 465 (1982)..............................................................................5, 6

5 Brewster v. Shasta County,
     275 F.3d 803 (9th Cir. 2001)...........................................................................4
6

7 by Brockmeyer v. May,
     361 F.3d 1222 (9th Cir. 2004)........................................................................10

8 Cascade Health Solutions v. Peacehealth,
9    515 F.3d 883 (9th Cir. 2008)......................................................................9, 11

10 In re Cement Antitrust Litigation,
     673 F.2d 1020 (9th Cir. 1982)..........................................................................4
11

12 Kersh v. General Council of the Assemblies of God,
     535 F. Supp. 494 (N.D. Cal. 1982), overruled on other grounds, Hollinger v. Titan
13   Capital Corp., 914 F.2d 1564 (9th Cir. 1990)................................................5, 11

14 Klinghoffer v. Achille Lauro Lines,
     921 F.2d 21 (2d Cir. 1990).........................................................................5, 11
15

16 Marsall v. City of Portland,
     No. CV-01-1014-ST, 2004 WL 1774532 (D.Or. August 9, 2004)...........................5

17 Mateo v. M/S Kiso,
18   805 F. Supp. 792 (N.D. Cal. 1992) ................................................................10

19 Nixon v. Fitzgerald,
     457 U.S. 731 (1982)......................................................................................3
20

21 Paiute-Shoshone Indians v. City of L.A.,
     No. 1:06-cv-0736 OWW SMS, 2007 WL 2202242 (E.D. Cal. July 27, 2007)............5

22 Rebel Oil Co., Inc. v. Atl. Richfield Co.,
23   51 F.3d 1421 (9th Cir. 1995)........................................................................7, 8

24 Tuepker v. State Farm Fire & Cas. Co.,
     507 F.3d 346 (5th Cir. 2007).............................................................................3
25

26 Vision Air Flight Serv. v. M/V Nat'l Pride,
     155 F.3d 1165 (9th Cir. 1998)..........................................................................4

27

28

1

**NOTICE OF MOTION**

2      PLEASE TAKE NOTICE THAT on August 19, 2008 at 2:00 p.m., or as soon thereafter as

3  the matter may be heard in Courtroom 2, before the Honorable Claudia Wilken, in the United States

4  District Court for the Northern District of California, Oakland Division, the parties will move this

5  Court pursuant to 28 U.S.C. § 1292(b) to certify three issues for an interlocutory appeal to the Court

6  of Appeals for the Ninth Circuit addressed in this Court's orders on Abbott's dispositive motions

7  dated October 21, 2004, March 2, 2005, July 6, 2006, and May 16, 2008 (Declaration of James F.

8  Hurst in Support of Joint Motion To Certify Issues For Interlocutory Appeal Pursuant to 28 U.S.C. §

9  1292(b), Exs. A-D).  This motion is supported by the accompanying Memorandum of Points and

10  Authorities, the Declaration of James F. Hurst, pleadings and documents on file with the Court, and

11  such other argument or evidence as may be presented at the hearing on the motion.

12

**INTRODUCTION**

13      In an effort to avoid the inherent risks and expense of trial, the parties have agreed to a

14  settlement subject to Court approval and contingent on the outcome of a proposed interlocutory

15  appeal on key legal issues in the case.  Pursuant to that settlement and the contemporaneously filed

16  motion for preliminary settlement approval, the parties jointly seek certification under § 1292(b) of

17  the following three issues (with a preliminary paragraph for context) addressed in the Court's orders

18  resolving Abbott's dispositive motions in this case:

19          In this case, Plaintiffs have alleged that Abbott Laboratories' pricing decisions in

20          December 2003 violated the Sherman Act under a monopoly-leveraging theory, and

21          California Unfair Competition Law under Business & Professions Code §§ 17200, et

22          seq., and, further, that such conduct unjustly enriched Abbott. Plaintiffs claim that

23          Abbott raised the price of a patented drug (Norvir) by 400% (representing a $6.84

24          increase per 100 mg daily dose) in one alleged market (the Booster Market) in an

25          effort to create or maintain a monopoly for another Abbott drug known as Kaletra in a

26          separate alleged market (the Boosted Market).  Norvir's active ingredient is called

27          "ritonavir."  Kaletra is a co-formulated product that includes both ritonavir and a

28          protease inhibitor known as "lopinavir."  The three proposed interlocutory issues are:

<u>Issue One</u>:  Whether, as a matter of law, a plaintiff can establish antitrust injury based on the payment of an increased price for a patented product in the leveraging market, where the plaintiff contends the price increase was designed to maintain or create a monopoly in the leveraged market?

<u>Issue Two</u>:   Whether, as a matter of law, a plaintiff can potentially establish monopoly power – in a case where the defendant allegedly used exclusionary pricing to slow a market share decline – where some existing competitors have increased both their market share and prices since the challenged pricing decision?

<u>Issue Three</u>: Whether the Ninth Circuit's decision in *Cascade Health Solutions v. Peacehealth*, 515 F.3d 883 (9th Cir. 2008), mandates judgment against a monopoly leveraging claim based on unilateral pricing conduct where there is no allegation of below cost pricing?

The proposed appeal involves three questions of law that go to the heart of critical elements of Plaintiffs' Sherman Act claims and UCL claim).  And, under the parties' agreement, the proposed appeal will necessarily terminate the litigation.  Thus, each of these issues "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order[s at issue] may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## BACKGROUND

On July 30, 2008, after more than four years of litigation and months of negotiations with the substantial assistance of Judge Edward A. Infante (ret.), the parties reached a settlement to resolve all of the individual and classwide claims in this case, subject to the Court's approval.  (Declaration of Christopher T. Heffelfinger In Support Of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement, Ex. D).  In general, Abbott has agreed to make a non-refundable payment of $10 million to HIV charities if this Court approves an interlocutory appeal to the Ninth Circuit on three controlling issues of law and the Ninth Circuit accepts at least two of the three issues for interlocutory appeal.  (*Id.* ¶ 2).  Any additional settlement payments are contingent on the outcome of that appeal.  For example, if Abbott loses the appeal, it would pay an additional $17.5 million split

2

1   between the HIV charities (70%) and California class members (30%).  If Abbott prevails on appeal,

2   no further payments would be made.  (*Id.* ¶ 16).  Regardless of the outcome of the appeal, the case

3   will terminate according to the settlement terms, and the Court and the parties will be spared the

4   burden of a trial.  (*Id.* ¶ 17).

5                                              **ARGUMENT**

6          The three issues jointly proposed by the parties meet the statutory criteria for an interlocutory

7   appeal, because they each involve a "controlling question of law," as to which "there is substantial

8   ground for difference of opinion," and "an immediate appeal from the order may materially advance

9   the ultimate termination of the litigation."  28 U.S.C. § 1292(b).[1]

10  **I.     Immediate Appeal On The Three Issues Will Necessarily Terminate The Litigation.**

11         A critical inquiry in determining whether to certify issues for interlocutory appeal is whether

12  "an immediate appeal from the order may materially advance the ultimate termination of the

13  litigation."  28 U.S.C. § 1292(b).  This element is satisfied here because the parties' settlement

14  guarantees that the requested interlocutory appeal, if certified by this Court and accepted by the

15  Ninth Circuit, will end the case.

16         This fact addresses one of the Court's main concerns when denying Abbott's prior § 1292(b)

17  petitions.  In connection with Abbott's prior petition, the Court concurred with Plaintiffs' concern

18  about "waiting for the result of an interlocutory appeal would unjustifiably delay trial."  (Hurst

19  Decl., Ex. D (5/16/08 Order at 19)).  Plaintiffs are no longer raising any such concern because, under

20  the settlement, a trial will no longer be necessary.

21         The parties' agreement also addresses the Court's concern about the possibility the case

22  could continue no matter how the interlocutory appeal is resolved.  When denying Abbott's §

23  1292(b) petition in the related cases, for instance, the Court noted that "Plaintiffs assert other claims

---

24  [1]     Despite the settlement posture of this motion, settlements conditioned upon appeal are

25  permitted and do not moot interlocutory appeals.  This is true especially when the parties have a
    "considerable financial stake in the resolution of the question presented."  *See, e.g., Nixon v.*

26  *Fitzgerald,* 457 U.S. 731, 743-44 (1982) (rejected argument that interlocutory appeal became moot
    when the parties entered into a high-low agreement) (quoting *Havens Realty Corp. v. Coleman,* 455

27  U.S. 363, 371 (1982) (addressing a similar agreement)); *Tuepker v. State Farm Fire & Cas. Co.,* 507
    F.3d 346, 357 (5th Cir. 2007) (holding that a subsequent high/low agreement did not moot the

28  controversy and, instead, simply "liquidate[d] damages to be paid upon the outcome of a case while
    maintain[ing] a live case and controversy between the parties with respect to the issues on appeal").

3

1   in addition to their Sherman Act claims, at least some of which would continue notwithstanding a

2   successful appeal by Abbott, even if below-cost pricing is not shown."  (Hurst Decl., Ex. E (7/7/08

3   Order at 5)).  Here, in contrast, the parties' settlement ensures the case will be over no matter how

4   the appeal is resolved, as long as it is resolved on the merits.   That is, in fact, the very point of the

5   parties' settlement – that is, to spare the Court and the parties from an expensive and time-

6   consuming trial and post-trial proceedings.

7          Thus, the proposed interlocutory appeal falls squarely within the purpose of § 1292(b), which

8   should be invoked to "avoid protracted and expensive litigation."  *In re Cement Antitrust Litigation,*

9   673 F.2d 1020, 1026 (9th Cir. 1982).

10  **II.     The Proposed Issues For Appeal Involve Controlling Questions Of Law On Which**

11  **There Is Substantial Ground For Difference Of Opinion.**

12         In addition to streamlining and resolving the litigation, each of the proposed issues also

13  satisfies the § 1292(b) requirements that the interlocutory appeal involve (1) a "controlling issue of

14  law" over which (2) "there is substantial ground for difference of opinion."

15         An issue is controlling if "resolution of the issue on appeal could materially affect the

16  outcome of litigation in the district court."  *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026

17  (9th Cir. 1982); *Brewster v. Shasta County*, 275 F.3d 803, 805 (9th Cir. 2001) (same); *Vision Air*

18  *Flight Serv. v. M/V Nat'l Pride*, 155 F.3d 1165, 1168 (9th Cir. 1998) (same).  As this Court has

19  noted in the related cases, "[w]hether an appeal may materially advance the litigation is linked to

20  whether an issue of law is 'controlling' in that the court should consider the effect of a reversal on

21  the management of the case."  (Hurst Decl., Ex. E (7/7/08 Order at 3)).

22         A properly framed "controlling issue of law" may require some factual application for

23  context.  In *Palmer v. Sanderson*, for example, the Ninth Circuit agreed to hear an interlocutory

24  appeal on the following "purely legal" issue despite its relation to the alleged facts:  "The questions

25  before us are purely legal:  first, whether the right to be free from the degree of force allegedly used

26  by Sanderson was clearly established on the date of Palmer's arrest, and second, whether there is any

27  genuine issue of material fact as to whether a reasonable deputy could believe that his conduct in

28  arresting Palmer was constitutional."  9 F.3d 1433, 1435 (9th Cir. 1993).  These questions turn on

1  whether certain facts were "clearly established" in the summary judgment record, and what a

2  "reasonable deputy could believe" in the context of the unique circumstances of that case.  *Id.*

3      Additionally, there is "a substantial ground for difference of opinion" on a controlling issue

4  of law "when it is difficult and of first impression."  *Marsall v. City of Portland*, No. CV-01-1014-

5  ST, 2004 WL 1774532, at *5 (D.Or. August 9, 2004) (quotation omitted)); *see also Kersh v. General*

6  *Council of the Assemblies of God*, 535 F. Supp. 494, 498 (N.D. Cal. 1982), overruled on other

7  grounds, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) (finding substantial

8  grounds on "difficult questions of first impression in this Circuit"); *Klinghoffer v. Achille Lauro*

9  *Lines*, 921 F.2d 21, 25 (2d Cir. 1990) (finding "substantial grounds for difference of opinion" when

10 the issue is "of first impression").  In fact, interlocutory appeal is particularly warranted where there

11 is no other case on point, and existing caselaw does not provide clear guidance as to the proper legal

12 standard.  *See Paiute-Shoshone Indians v. City of L.A.*, No. 1:06-cv-0736 OWW SMS, 2007 WL

13 2202242, *2 (E.D. Cal. July 27, 2007) (finding substantial grounds for a difference of opinion when

14 no other cases "concerned factual circumstances similar enough to this case to provide clear

15 guidance").

16 **A.  Issue One Involves A Controlling Question Of Law On Which There Is A**

17     **Substantial Ground For Difference Of Opinion.**

18     Issue One, which addresses antitrust injury, involves a controlling issue on which there is a

19 substantial ground for difference of opinion.

20     **1.  Whether Plaintiffs Can Show Antitrust Injury Involves A Controlling**

21     **Question Of Law.**

22     Plaintiffs contend they have suffered "antitrust injury" because Abbott raised Norvir's price,

23 and did not raise Kaletra's price, as part of an alleged anti-competitive scheme and that they

24 purportedly suffered antitrust injury when paying the increased price.  Specifically, Plaintiffs

25 contend they faced a Hobson's choice of either paying more for competing boosted regimens versus

26 paying less for Kaletra while accepting its purportedly harmful side effects.  (*See* Hurst Decl., Ex. D

27 (5/16/08 Order at 6)).

28

1    In connection with its ruling on summary judgment, this Court agreed with Plaintiffs that

2  these allegations satisfy the antitrust injury requirement under *Blue Shield of Va. v. McCready*, 457

3  U.S. 465 (1982). Specifically, the Court held that Plaintiffs did not have to "come forward with a

4  patient who wanted to purchase a drug that competes with Kaletra but could not afford to do so."

5  (Hurst Decl., Ex. D (5/16/08 Order at 7-8)).   The Court reasoned that the alleged injury is "the

6  'penalty' consumers pay, in the form of a disparately high price for Norvir when they choose to use

7  one of the competing drugs, that gives rise to the injury.  (*Id.* at 8).  The Court further held:  "And

8  although Abbott maintains that requiring patients to pay a high price for a patented drug can never

9  be an antitrust injury, the price of Norvir cannot be considered in a vacuum.  It is the comparatively

10 high price of Norvir in relation to the low price of Kaletra that is the crux of Abbott's alleged

11 anticompetitive conduct." (*Id.*).

12    Abbott's position is that (a) the general rule is that antitrust injury must flow from

13 anticompetitive effects in the market that allegedly was monopolized (i.e., supracompetitive pricing

14 in the Boosted Market); and (b) even if *McCready* could be read as an exception to this general rule

15 based on a Hobson's choice theory, paying more for a patented drug does not constitute antitrust

16 injury as a matter of law.  (Hurst Decl., Ex. D (5/16/07 Order at 7-8;  Ex. F (5/1/08 Tr. at 41-42)).

17    This legal issue between the parties is a "controlling issue of law" because it goes to the heart

18 of whether Plaintiffs can satisfy the antitrust injury element of their Sherman Act claims (and, by

19 extension their UCL claim).  If Abbott is correct, Plaintiffs' claims would fail as a matter of law.  If

20 Plaintiffs are correct, in contrast, they properly asserted antitrust injury.

21    **2.    There Is A Substantial Ground For Difference Of Opinion On Whether**

22          **Plaintiffs Can Show Antitrust Injury.**

23    The parties agree that there is a substantial ground for difference of opinion on the existence

24 of antitrust injury.  As discussed above, the Court's ruling on antitrust injury turned on *McCready*,

25 which Abbott has argued is inapplicable to this case.  While the Court disagreed with Abbott, the

26 issue is one of first impression.  The Court of Appeals has yet to apply *McCready* where, as here, the

27 plaintiff alleges injury in a monopoly-leveraging theory based on raising the price of a patented

28 product in the alleged leveraging market and failing to raise the price of a patented product in the

6

1 leveraged market.  This case raises an interesting issue of first impression concerning how the

2 intersection between antitrust law and patent law affects the antitrust injury requirement.  The parties

3 thus agree that there is substantial ground for different opinions on Issue One.

4 **B.    Issue Two Involves A Controlling Question Of Law On Which There Is A**

5 **Substantial Ground For Difference Of Opinion.**

6 Issue Two, which addresses monopoly power, involves a controlling issue on which there is a

7 substantial ground for difference of opinion.

8 **1.    Whether Plaintiffs Can Show Monopoly Power Under The**

9 **Circumstances Of This Case Involves A Controlling Question Of Law.**

10 According to Plaintiffs, Abbott's purportedly large share of the Boosted Market is sufficient

11 to show monopoly power in that market.  Plaintiffs do not dispute that Abbott's market share has

12 declined since the challenged conduct in December 2003.[2]  Instead, they argue that Abbott's pricing

13 slowed that decline.  Plaintiffs further argue that they have presented direct evidence that Abbott's

14 price increase had a significant impact on the Boosted Market.  According to Plaintiffs, the record is

15 sufficient to create a triable issue of fact as to whether Abbott has monopoly power in the Boosted

16 Market.

17 This Court agreed with Plaintiffs and denied Abbott's summary judgment motion on this

18 issue.  (Hurst Decl., Ex. C (7/6/06 Order); Ex. D (5/16/08 Order)).  While recognizing at the

19 summary judgment hearing no case is directly on point, the Court rejected Abbott's position that

20 "direct evidence must take the form of evidence of restricted output and consequent

21 supracompetitive prices."  (*Id.*, Ex. D (5/16/08 Order at 9); Ex. C (7/6/06 Order at 8)).  The Court

22 explained that while "evidence of restricted output and supracompetitive prices is sufficient to

23 demonstrate the injurious exercise of market power, it does not suggest that such evidence is

24 necessary to make such a showing."  (*Id.*).  The Court distinguished *Rebel Oil Co., Inc. v. Atl.*

25 *Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995), which Abbott relied upon, on the ground that it

26 "involved predatory pricing of a commodity," as opposed to the situation here, "where each PI has

27 ____
[2]    According to the most recent market data, Reyataz had 60,329 prescriptions in June 2008
28 while Kaletra had 51,737 prescriptions.  In contrast, at the time of the December 2003 price increase,
Reyataz had 19,724 prescriptions and Kaletra had 49,030 prescriptions.  (Hurst Decl., Ex. G).

1    only one manufacturer and prices are expected to be significantly above marginal cost."  (*Id.*, Ex. D

2    (5/16/08 Order at 9-10)).  The Court also found that the calculations of Abbott's market share by

3    Plaintiffs' expert were sufficient to create a triable issue of fact as to Abbott's monopoly power.  (*Id.*

4    at 10-11; Ex. C (7/6/06 Order at 9)).

5          Abbott, in contrast, contends that Plaintiffs cannot show monopoly power without showing

6    that Abbott has the ability to restrict output and charge supracompetitive prices in the Boosted

7    Market.  (*E.g.*, Hurst Decl., Ex. H (Abbott's 1/9/06 Br. at 13-14 ("Plaintiffs have never alleged – and

8    have no facts to prove – that … Abbott is charging supracompetitive prices, or that competitors have

9    been unable to expand their output in response to Abbott's re-pricing of Norvir."))).  Abbott further

10   argues that Plaintiffs' claim fails as a matter of law given the undisputed evidence that Abbott's

11   market share has declined since the challenged conduct and rivals have no material restrictions on

12   their ability to produce competing PIs.  (*Id.* ("To the contrary, competitors have expanded their

13   output and succeeded in stealing market share away from Kaletra while, at the same time, raising the

14   prices of their own PIs."); *see also* Hurst Decl., Ex. F. (5/1/07 Tr. at 41-42); *see also* Docket Nos.

15   445 & 479)).

16         Whether, as a matter of law, a plaintiff can establish monopoly power in the face of rivals'

17   increasing shares and prices is a pure issue of law.  Because resolution of this issue is key to

18   settlement of this case, it is controlling.

19         **2.      There Is A Substantial Ground For Difference Of Opinion On Whether**

20         **         Plaintiffs Can Show Monopoly Power Under The Circumstances Of This**

21         **         Case.**

22         A substantial ground for difference of opinion exists as to whether Plaintiffs can show

23   monopoly power under these circumstances.  As the Court explained in its latest summary judgment

24   decision, there does not appear to be any case squarely addressing whether direct evidence of

25   monopoly power requires a showing of restricted output and supracompetitive prices.  As the Court

26   explained:  "Abbott has not cited any case holding that restricted output and supracompetitive prices

27   are the only form direct evidence [of monopoly power] can take."  (Hurst Decl., Ex. D (5/16/08

28   Order at 9)).  Again, the Court found that *Rebel Oil* "does not suggest that such evidence is

8

1   necessary to make such a showing," only that it is sufficient. (*Id.*). The Court also held that market

2   share calculations by Plaintiffs' experts – which showed Abbott's market share dropping from 88%

3   to below 70% – was sufficient circumstantial evidence to raise a triable issue of fact as to the

4   monopoly power element. (*See, e.g.*, Hurst Decl., Ex. C (7/6/06 Order at 9)).

5       But neither party has been able to find any case directly addressing the relevant monopoly

6   power issue, particularly where the parties agree that existing competitors have increased both their

7   market share and prices since the challenged pricing decision . Thus, it raises an important question

8   of first impression.

9       **C.    Issue Three Involves A Controlling Question Of Law On Which There Is A**

10          **Substantial Ground For Difference Of Opinion.**

11      Issue Three, which addresses exclusionary conduct, also involves a controlling issue on

12   which there is a substantial ground for difference of opinion.

13          **1.    Whether Plaintiffs Need To Allege And Prove Below-Cost Pricing In This**

14              **Case Involves A Controlling Question Of Law.**

15      Plaintiffs maintain that, with regard to the exclusionary conduct element of their Sherman

16   Act claims, they do not need to show below-cost pricing.

17      This Court agreed, finding "that the Ninth Circuit's recently developed test for identifying

18   potentially exclusionary pricing in the context of bundled discounts, as set out in *Cascade Health*

19   *Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008), does not apply in the context of the

20   particular antitrust theory asserted against Abbott." (Hurst Decl., Ex. D (5/16/08 Order at 11)). The

21   Court thus held that Plaintiffs "need not demonstrate that the imputed price of the lopinavir portion

22   of Kaletra is below Abbott's average variable cost of producing it." (*Id.*; *see also* Hurst Decl., Ex. I

23   (4/28/08 Order at 2)).

24      Abbott's position is that the case should be dismissed as a matter of law under the below-cost

25   rule. The parties thus seek appellate guidance as to whether the below-cost rule applies in this case.

26   This pure issue of law goes to the heart of whether Plaintiffs can satisfy the exclusionary conduct

27   element of their Sherman Act claims (and, by extension their UCL claim). A finding against

28   Plaintiffs on this issue is controlling because it will be determinative of the settlement of this case.

1

2

### 2.    There Is A Substantial Ground For Difference Of Opinion On Whether Plaintiffs Need To Allege And Prove Below-Cost Pricing In This Case.

3    A substantial ground for difference of opinion exists as to whether the below-cost rule should

4    apply in this case.  The parties obviously do not agree on the merits of this issue.  But they do agree

5    that the Court's ruling is one of first impression given the unique circumstances of this case.

6    The parties recognize that the Court addressed this issue in its order denying § 1292(b) relief

7    in *Meijer*.  In that order, as discussed above, the Court primarily held that "[a]n interlocutory appeal

8    [in that case] would be inappropriate under the circumstances because resolution of the question

9    Abbott seeks to certify would not be likely to advance the termination of this litigation."  (Hurst

10   Decl., Ex. E (7/7/08 Order at 4)).  That ruling was based on the fact that "the *Meijer* Plaintiffs have

11   already alleged that Kaletra is sold below cost, and Plaintiff SmithKline Beecham has suggested that

12   it might amend the complaint to include such an allegation if any appeal is successful."  (*Id.* at 5).

13   But in this context of the current settlement – particularly if two other issues are being certified for

14   appeal – certifying the below-cost issue makes sense.  Doing so would, if accepted by the Ninth

15   Circuit, resolve this litigation pursuant to the terms of the settlement agreement.  Plaintiffs in this

16   litigation have not alleged that Kaletra (or the lopinavir portion of Kaletra) is below cost.

17   When denying Abbott's earlier § 1292(b) petition in *Meijer* the Court also noted:  "While

18   Abbott insists that the Court's ruling [on application of the below-cost rule] is contrary to precedent,

19   it has not pointed to any case that conflicts with that ruling."  In support, the Court relied on *Mateo

20   v. M/S Kiso*, 805 F. Supp. 792, 800 (N.D. Cal. 1992), *abrogated on other grounds by Brockmeyer v.

21   May*, 361 F.3d 1222 (9th Cir. 2004), for the proposition that "[a] substantial ground for difference of

22   opinion is not established by a party's strong disagreement with the court's ruling; the party seeking

23   an appeal must make some greater showing."  (Hurst Decl., Ex. E (7/7/08 Order at 3, 5)).

24   Here, where the parties agree that there is a substantial ground for a difference of opinion, the

25   parties have made such a showing.  Regardless of whether any decision directly conflicts with the

26   Court's ruling, that ruling raises an important issue of first impression – i.e., whether the below-cost

27   rule applies in a differentiated product market where fixed costs far exceed variable costs and in the

28   context of the type of monopoly leveraging claim raised in this case.  As the Court noted during oral

10

1  argument on Abbott's motion for summary judgment, the *Cascade* decision is "recently decided"

2  and, therefore, its implications are not fully clear.  (Hurst Decl., Ex. F (5/1/08 Tr. at 38)).   The

3  parties as well as the public at large stand to benefit from appellate clarification of the breadth of the

4  Ninth Circuit's recent *Cascade* decision.  Issue Three thus presents a "difficult question[] of first

5  impression in this Circuit," a showing sufficient to satisfy the requirement that there be substantial

6  ground for difference of opinion.  *Kersh*, 535 F. Supp. at 498; *see also Klinghoffer*, 921 F.2d at 25

7  (finding "substantial grounds for difference of opinion" when the issue is "of first impression").

8  **CONCLUSION**

9  For the foregoing reasons, the parties respectfully request that this Court certify the three

10  issues for appeal.

Respectfully submitted,

11

12  Dated:  August 13, 2008          By:    /s/ Christopher T. Heffelfinger

13  Christopher T. Heffelfinger
   cheffelfinger@bermanesq.com
14  BERMAN DEVALERIO PEASE
   TABACCO BURT & PUCILLO
15  Co-Counsel for Plaintiffs

16

17  Hollis L. Salzman
   Michael W. Stocker
18  Kellie Safar Lerner
   LABATON SUCHAROW LLP
19  Co-Counsel for Plaintiffs

20  By:    /s/  James F. Hurst
   Dated: August 13, 2008
21

22  James F. Hurst
   jhurst@winston.com
23  WINSTON & STRAWN LLP

24  Jeffrey I. Weinberger
   MUNGER, TOLLES & OLSON LLP
25

26  Counsel for Abbott Laboratories

27

28

**GENERAL ORDER 45 ATTESTATION**

I, James F. Hurst, am the ECF User whose ID and password was used to file this JOINT MOTION TO CERTIFY ISSUES FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B). In compliance with General Order 45, X.B., I hereby attest that Christopher T. Heffelfinger, counsel for Plaintiffs, concurred in this filing.


Dated:  August 13, 2008

By:      /s/ James F. Hurst
James F. Hurst
jhurst@winston.com
WINSTON & STRAWN LLP
Counsel for Defendant