IRELL & MANELLA LLP
Alexander F. Wiles (CA 73596) awiles@irell.com
Brian Hennigan (CA 86955) bhennigan@irell.com
Stephanie Kaufman (CA 162644) skaufman@irell.com
Trevor V. Stockinger (CA 226359) tstockinger@irell.com
S. Albert Wang (CA 250163) awang@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California  90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

ARNOLD & PORTER  LLP
Kenneth A. Letzler, Pro Hac Vice
555 Twelfth Street, NW
Washington DC  20004-1206
Telephone: (202) 942-5000
Facisimile: (202) 942-5999

*Counsel for SmithKlineBeecham Corp. d/b/a GlaxoSmithKline*

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SmithKline Beecham Corporation d/b/a GlaxoSmithKline, <br><br> Plaintiff, <br><br> v. <br><br> Abbott Laboratories, <br><br> Defendant. | Case No. C07-5702 (CW) <br><br> *Related per November 19, 2007 Order to* Case No. C04-1511 (CW) <br><br> **STIPULATION REGARDING COMPLETION OF THE PARTIES' DOCUMENT PRODUCTIONS** <br><br> **DATE:   N/A** <br> **TIME:    N/A** <br> **PLACE:  N/A** <br> **JUDGE:   Honorable Bernard Zimmerman** |

WHEREAS the parties wish to resolve their disputes concerning certain of their respective obligations to produce documents in this action;

WHEREAS nothing in this Stipulation shall relieve Abbott of its obligation to comply with the provisions of the First Discovery Order issued by this Court on November 14, 2008;

WHEREAS the parties have made certain representations to each other about the scope of their document productions to date and have agreed to memorialize those representations; and

WHEREAS the parties wish to set guidelines and dates for the completion of their respective document productions;

**IT IS HEREBY STIPULATED AND AGREED**:

1. Abbott states that, to the best of its knowledge, and absent inadvertent omissions and honest oversights:

   a) it has completed production of non-privileged responsive documents as it said it would do in its responses to Request Nos. 1, 2, 4-8, 10-11, 13-16 and 22-23 in Defendant Abbott Laboratories' Amended Responses to Plaintiff's First Set of Requests for Inspection and Production of Documents and Tangible Things (Nos. 1-37);

   b) it has completed its production of non-privileged responsive documents as it said it would do in its response to Request No. 3 in Defendant Abbott Laboratories' Amended Responses to Plaintiff's First Set of Requests for Inspection and Production of Documents and Tangible Things (Nos. 1-37) and that, in collecting, reviewing and producing documents responsive to the underlying document requests in *In re Norvir,* Abbott did not apply any date restrictions; and

   c) when it complied with the First Discovery Order issued by this Court on November 14, 2008, Abbott completed its production of the documents it agreed to produce in its responses to Request Nos. 25-29 and 31 of Plaintiff's First Set of Requests for Inspection and Production of Documents and Tangible Things (Nos. 1-37).

- 1 -
Stipulation Regarding Completion of the Parties Document Productions,
CASE NO. C07-5702 (CW)
1988804.

2. Abbott further agrees that, using reasonable efforts, and without waiving any of its objections, it will complete production of the following categories by January 16, 2009:

   a) Documents Abbott agreed to produce in its responses to Request Nos. 9, 12, 21, 24 and 33 in Defendant Abbott Laboratories' Amended Responses to Plaintiff's First Set of Requests for Inspection and Production of Documents and Tangible Things (Nos. 1-37);

   b) Documents Abbott agreed to produce in its responses to Request Nos. 17-20 in Defendant Abbott Laboratories' Amended Responses to Plaintiff's First Set of Requests for Inspection and Production of Documents and Tangible Things (Nos. 1-37), but using the date range of January 1, 1997 to present;

   c) Non-privileged documents and/or data sufficient to show revenue, costs, profits and losses from agreements in which Abbott licensed to others its intellectual property rights relating to Norvir and/or Kaletra (to the extent Abbott allocates costs, profits and losses to the agreements);

   d) Non-privileged logs recording calls concerning the Norvir price increase created during the period January 1, 1997 through December 31, 2004;

   e) Non-privileged paper enclosures to NOR00096788 and NOR00097886;

   f) Exhibits to all depositions taken in government investigations of the price increase of Norvir that Abbott took in December 2003;

   g) Non-privileged documents concerning the pricing of Kaletra and Norvir at their respective launches created during the period January 1, 1997 through December 31, 2004;

   h) Non-privileged marketing documents relating to Norvir and Kaletra, as defined by agreement of the parties reflected in Joshua Y. Karp's July 17, 2008 letter, and which were created during the period January 1, 1997 through December 31, 2004;

i) Non-privileged documents otherwise responsive to one or more of GSK's document requests maintained by the following custodians: James Tyree, Elaine Leavenworth, Al Harris, Mateen Husami, Daniel Lawton, Lawrence Pope, Jeffrey Devlin, Jesus Leal, Heather Mason, Laureen Cassidy, John Leonard, Jeffrey Leiden, Bill Dempsey, Catherine Babington, Bill Calhoun, Melissa Brotz and Sebastian Barba;

j) Non-privileged documents relating to the task force headed by James Tyree to consider Norvir and Kaletra pricing formed on or around September 2002 that were created during the period January 1, 1997 through December 31, 2004;

k) Non-privileged documents relating to Abbott's Ritonavir Supply Constraint program that were created during the period January 1, 1997 through December 31, 2004;

l) All non-privileged documents, including notes, regarding the meeting among Heather Mason, Miles White, Jeff Leiden, Catherine Babington and Elaine Leavenworth on or around October 22, 2003, that were created during the period January 1, 1997 through December 31, 2004;

m) Documents created during the period January 1, 1997 through December 31, 2004 that reflect communications (i) between any person in Abbott's licensing group with responsibility for Norvir, Kaletra, and/or the intellectual property rights embodied in those drugs, on the one hand, and any person in the marketing group with responsibility for Norvir and/or Kaletra, on the other hand, and (ii) concerning either Norvir pricing or Abbott's ritonavir licenses; and

n) Non-privileged documents produced to any governmental entity or submitted to such an entity in connection with a government investigation regarding the Norvir price increase in December 2003, using a date range of December 1, 2003 to the present.

3. Abbott further agrees that, using a date range of January 1, 2002 through the present, and using reasonable efforts, it will search for, collect and review for each of the following sub-categories (a) through (e), responsive documents from the five Abbott custodians most likely to have significant documents in that subcategory (*i.e.*, the top five Abbott custodians for documents in category (a), the top five Abbott custodians for documents in category (b), if different in whole or in part from category (a), and so on), and complete production of non-privileged documents otherwise responsive to one or more of GSK's document requests in the following sub-categories found in those custodians' files by January 16, 2009:

a) Pricing analyses created by Abbott in connection with Kaletra or Norvir, which contain or discuss the following:

   1) Analyses and/or forecasts estimating the effect of price changes (actual or considered and including discounts, chargebacks and rebates, to the extent discussed) of Lexiva, Norvir or Kaletra on sales/prescriptions of Kaletra or Lexiva;

   2) The effect of pricing (including discounts, chargebacks and rebates) for Lexiva, Norvir, and/or Kaletra on the formulary decisions of third-party payers; or

   3) The effect of pricing (including discounts, chargebacks and rebates) for Lexiva, Norvir and/or Kaletra on prescription decisions of doctors and/or patients;.

b) Norvir and Kaletra marketing documents containing or discussing any of the following:

   1) Comparisons of the performance characteristics of Kaletra and Norvir versus other PIs;

   2) Market research analyzing or discussing factors that affect doctors' prescription decisions and patient preferences as between Kaletra or Norvir and other PIs;

       3)    Discussions of issues relating to perceptions of the safety and efficacy of Kaletra or Norvir vis-à-vis other PIs in marketing Kaletra or Norvir to doctors and/or patients; or

       4)    Discussions of marketing strategies to increase sales of Kaletra or Norvir.

  c)    Documents discussing the effect of Norvir or Kaletra prices on sales/prescriptions of Kaletra or Lexiva, including third-party payer formulary decisions; and

  d)    Documents relating to the consideration of changes in the price of Kaletra; and

  e)    Documents relating to Abbott's communications, plans, and strategies concerning the decision to launch Norvir Meltrex and the timing of any such launch, and summary documents concerning Abbott's research and development for Norvir Meltrex.

4.    GSK states that, to the best of its knowledge and absent inadvertent omissions and honest oversights, it has completed production of the responsive documents it said it would produce in its responses to Request Nos. 1-6, 8, 11-23, 25-29, 30, 31, 33-64, 69, 71, 73, 75-93, 95-109, 111-120, 123, 126-133, 136, and 138 in GSK's Third Supplemental Response to Abbott Laboratories' First Set of Requests for Documents and Things to Plaintiff, Request Nos. 139-160 in GSK's Supplemental Response to Abbott Laboratories' Second Set of Requests for Documents and Things (Nos. 139-160), Request Nos. 161-173, 175-192 in GSK's Supplemental Response to Abbott Laboratories' Third Set of Requests for Documents and Things (Nos. 161-192).

5.    GSK further agrees that, using its reasonable efforts, it will complete production of the following categories by January 16, 2009:

  a)    Documents it said it would produce in its responses to Request Nos. 7, 9, 10, 32, and 65-68, 24, 94, 110, 121, 122, 124 and 125 in GSK's Third

Supplemental Response to Abbott Laboratories' First Set of Requests for Documents and Things to Plaintiff, and Request No. 155 in GSK's Supplemental Response to Abbott Laboratories' Second Set of Requests for Documents and Things (Nos. 139-160); and

    b)    Documents discussing, describing or tracking GSK's competitors' research and development of protease inhibitors in response to Request No. 174 in Abbott Laboratories' Third Set of Requests for Documents and Things (Nos.161-192).

6.    GSK further agrees that, using a date range of January 1, 2002 through the present, and using its reasonable efforts, it will search for, collect and review, for each of the following sub-categories (a) through (j), responsive documents from the five GSK custodians most likely to have significant documents in that subcategory (*i.e.*, the top five GSK custodians for documents in category (a), the top five GSK custodians for documents in category (b), if different in whole or in part from category (a), and so on), and complete production of non-privileged documents otherwise responsive to one or more of Abbott's document requests in the following sub-categories found in those custodians' files by February 2, 2009:

    a)    Pricing analyses created by GSK in connection with Lexiva, which contain or discuss:

        1)    Analyses and/or forecasts estimating the effect of price changes (actual or considered and including discounts, chargebacks and rebates, to the extent discussed) of Lexiva and/or other HIV drugs (including Norvir and Kaletra) on sales/prescriptions of Lexiva;

        2)    Analyses of the profitability of Lexiva price changes (actual or considered and including discounts, chargebacks and rebates);

        3)    Reasons and/or factors affecting Lexiva's pricing or price changes;

        4) The effect of pricing (including discounts, chargebacks and rebates) for Lexiva, Norvir, and/or Kaletra on the formulary decisions of third parties; or

        5) The effect of pricing (including discounts, chargebacks and rebates) for Lexiva, Norvir, and/or Kaletra on prescription decisions of doctors and/or patients;

    b) Lexiva marketing documents containing or discussing any of the following:

        1) Comparisons of the performance characteristics of Lexiva versus other PIs;

        2) Market research analyzing or discussing factors that affect doctors' prescription decisions and patient preferences as between Lexiva and other PIs;

        3) Discussions of issues relating to perceptions of the safety and efficacy of Lexiva vis-à-vis other PIs in marketing Lexiva to doctors and/or patients; or

        4) Discussions of marketing strategies to increase sales of Lexiva.

    c) Reports from clinical studies regarding the safety and efficacy of Lexiva and protocols of those studies;

    d) Reports from clinical studies that compare Trizivir to PI-anchored or NNRTI-anchored treatment regimens;

    e) Documents discussing the effect of Norvir and Kaletra price on sales/prescriptions of Lexiva, including third-party payer formulary decisions regarding Lexiva;

    f) Documents discussing or analyzing reasons why Lexiva's sales or prescriptions met, exceeded, or fell short of sales forecasts or expectations prior to introduction;

    g) Documents sufficient to show Lexiva's actual sales/prescriptions compared with forecasts of Lexiva's sales/prescriptions;

    h)    Data and/or documents sufficient to show estimates of prescriptions of different drug combinations containing Lexiva;

    i)    Documents discussing or analyzing changes in sales and/or market share of Kaletra, and the reasons for such changes; and

    j)    Surveys and notes from interviews with key opinion leaders concerning factors affecting patient preferences and physician prescribing practices with regard to PIs, including the effect of treatment costs on patient preferences and physician prescribing practices with regard to PIs.

7. GSK further agrees that, by February 2, 2009, it will complete production of transaction-level data sufficient to show all sales of Lexiva and Agenerase by payer type, including any discounts, chargebacks or rebates, for the period January 2002 through December 31, 2007. GSK's production of data pursuant to this paragraph will conform as closely as practicable to Abbott's transaction-level sales data, which Abbott produced on electronic media Bates-labeled RIT000001-RIT000003, but will be produced as kept in the ordinary course of GSK's business.

8. The parties agree that "the present," as that word is used throughout this stipulation, shall mean up to and including January 31, 2008.

9. GSK agrees that to the extent it searches an individual's files in collecting and reviewing documents pursuant to paragraph 5 or 6, it will complete its production of those documents by the earlier of either (a) 10 days in advance of the individual's deposition, or (b) the production date set out in paragraphs 5 and 6 above.

10. The parties agree to negotiate in good faith the scope and timing of their respective productions in response to Requests Nos. 134, 135 and 137 of Abbott Laboratories' First Set of Requests for Documents and Things to Plaintiff and Requests Nos. 35 and 36 of Plaintiff's First Set of Requests for Inspection and Production of Documents and Tangible Things (No. 1-37).

11. This Order does not alter or supersede the First Discovery Order dated November 14, 2008, ordering Abbott to produce certain categories of documents by November 26, 2008.

12. The parties hereby agree that upon completion of the obligations set forth in this Order and the November 14, 2008 Order regarding document production, the parties will have met their obligations to produce documents in response to the Rule 34 requests for production of documents heretofore directed to them.

13. GSK further agrees that this stipulation moots its motion to compel production, filed on November 13, 2008, to the extent that motion sought production of any documents covered by requests in GSK's First Set of Requests for Inspection and Production of Documents and Tangible Things (No. 1-37).

14. Notwithstanding Paragraph 12, this agreement does not resolve disputes concerning GSK's Second Set of Requests for Inspection and Production of Documents and Tangible Things (Nos. 38-43); disputes concerning the scope and timing of the parties' productions in response to Requests Nos. 134, 135 and 137 of Abbott Laboratories' First Set of Requests for Documents and Things to Plaintiff and Requests Nos. 35 and 36 of Plaintiff's First Set of Requests for Inspection and Production of Documents and Tangible Things (No. 1-37); disputes concerning materials withheld on the basis of privilege, work product protection or similar protections; or relieve the parties of their obligations under the Federal Rules of Civil Procedure if they discover additional responsive documents in the future.

15. This agreement is without prejudice to the right of either party to seek additional documents under Rule 34 of the Federal Rules of Civil Procedure, or of the opposing party to object to any such request on the ground, among others, that the request is unreasonably cumulative of requests made in the requests for production of documents addressed herein.

16. Nothing in this agreement shall be construed as a waiver of any objections made to discovery requests, including but not limited to, objections based on attorney-client

privilege and work product immunity or as a representation that any particular documents or categories of documents exist. The parties agree to produce the documents or categories of documents identified above only to the extent they exist and can be located after a reasonable search.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD:**

Dated: December 22, 2008

By: /s/ Alexander F. Wiles
Alexander F. Wiles
IRELL & MANELLA LLP
*Counsel for GSK*

Dated: December 22, 2008

By: /s/ Nicole Norris
Nicole Norris nnorris@winston.com
Charles Klein cklein@winston.com
Matthew A. Campbell macampbell@winston.com
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, California 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
*Counsel for Defendant*

I, S. Albert Wang, attest that concurrence in the filing of this document has been obtained from all persons required to sign it.

/s/ S. Albert Wang
S. Albert Wang

*Counsel for GSK*

**PURSUANT TO STIPULATION, IT IS SO ORDERED**

Dated: December 23, 2008

_____
Magistrate Judge Bernard Zimmerman
United States District Court
Northern District of California

- 10 -
Stipulation Regarding Completion of the Parties Document Productions,
CASE NO. C07-5702 (CW)

1988804.